Clint WARREN, Appellant,

v.

The STATE of Texas, State.

Nos. 2–02–104–CR, 2–02–105–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 21, 2002.

---

J.T. Borah, Denton, for Appellant.

Bruce Isaacks, Criminal District Attorney, Emma O. Guzman, Tracy Kempf, and Karen Turner, Assistant Criminal District Attorneys, Denton, and Matthew Paul, State Prosecuting Attorney, Austin, for Appellee.

PANEL F: DAY and DAUPHINOT, JJ., and JOHN HILL, J. (Retired, Sitting by Assignment).

## OPINION

JOHN HILL, Justice (Retired).

Clint Warren appeals his convictions on two informations of theft by check in an amount greater than twenty dollars but

less than five hundred dollars. The trial court assessed his punishment at 180 days in the Denton County Jail for each offense. In what appear to be three points, appellant argues that the evidence is insufficient to support his convictions of the two offenses. While appellant's points are less than clear, he appears to assert that the evidence is both legally and factually insufficient.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the judgment. *Cardenas v. State*, 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the evidence. *Johnson*, 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the judgment, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis*, 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only where necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 9, 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997). When reviewing a case for legal and factual sufficiency of the evidence, the standard of review is the same for both direct and circumstantial evidence. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App.1999).

In cause number CR–2001–08141–Z, the checks that ultimately formed the basis of appellant's conviction were his check number 0591, in the amount of $50.60, passed at Winn–Dixie number 2467; his check number 0587 in the amount of $50.60, passed at Winn–Dixie number 2467; his check number 0526 in the amount of $82.18, passed at Kroger number 493; his check number 0505 in the amount of $43.04, passed at Kroger number 422, and his check number 0554 in the amount of $84.41, passed at Kroger number 422.

In cause number CR–2001–08144–Z, the checks that ultimately formed the basis of appellant's conviction were his temporary check in the amount of $44.76, passed at Sack–N–Save number 202, and his check number 0585 in the amount of $50.60, passed at Winn–Dixie number 2467.

The State's first witness, Faith Renee Thilman, who is the vice president over loss prevention and security at First Convenience Bank, a division of First National Bank Texas, identified an application setting up a checking account, dated Decem-

ber 3, 2000 and signed by Clint Warren, with driver's license number 17957299. She indicated that it is the regular practice of the bank to look at the driver's license of the person opening the account to be sure that the picture on the license matches the person making the application. The address stated on the application is 1814 Sena, Denton, Texas 76201. Thilman said that only a penny was required to open the account.

Thilman testified that appellant's balance on December 4, 2000 was $.01. She indicated that appellant made a deposit of $200.22 on December 7, 2000. She related that appellant's account balance became negative from December 7, 2000 to December 11, 2000 due to several ATM withdrawals, including service fees. She told the court about various negative withdrawals, checks returned due to insufficient funds, and related fees that made the negative balance increasingly larger.

Next, Latasha Johnson testified that she is an employee of Sack–N–Save number 202 in Denton County, Texas. She indicated that on December 14, 2000, she accepted a temporary check in the amount of $44.76 from a person identifying himself as Clint Warren. She said that when accepting the check, she wrote down the number of appellant's driver's license as 17957299 and that the driver's license showed the date of birth as 9–24–80. She related that the address on the check is 1814 Sena, Denton, Texas 76201. She confirmed that she received the check in payment for goods. She stated that appellant did not tell her that the check was not good. She asserted that she would not have sold appellant the goods if she had known the check was not good. She insisted that the picture on the driver's license matched that of the person presenting the check. Johnson was unable to identify appellant

as the person who had presented the check.

Randolph Owen Starr testified that he is a sergeant for the Denton County Sheriff's Department detention division. He indicated that appellant's driver's license, which Starr had in the inmate property room, had the same number as the driver's license number that appeared on the temporary check presented to Latasha Johnson at the Sack–N–Save.

Michael McCarty testified that he is the assistant manager of Sack–N–Save number 202. He indicated that after a check has been returned, store employees call the number on the check every day and send the maker a certified letter. He acknowledged that a certified letter was sent to 1814 Sena, Denton, Texas 76201, the address on the check, and was returned unclaimed. McCarty confirmed that the account number on the check matches the account number opened at the First Convenience Bank by Clint Warren. He indicated that as far as he knew, the goods had never been returned or paid for. He acknowledged that he could not confirm whether anyone from the store ever contacted the maker of the check.

Erica Tipton testified that she is an office cashier at Kroger number 493. She identified check number 0526, bearing Clint Warren's signature, in the amount of $82.18, as a check that she received at Kroger's on December 19, 2000. She said the driver's license presented to her by the maker of the check was driver's license number 17957299. She confirmed that the driver's license number, address, date of birth, and expiration date of the driver's license matches the same information contained on the original application for the checking account. She insisted that when she receives a check she compares the picture on the driver's license to the person presenting the check and that she

compares the signature on the driver's license to the signature on the check.

Robert Meldrum testified that he received checks signed "Clint Warren" while he was a cashier at Kroger number 422. One of those was check number 0505, dated December 15, 2000, in the amount of $43.04. The other check was check number 0554, dated December 26, 2000, in the amount of $84.41. Meldrum said that he believed that the checks were written and signed in his presence. He said that the person who presented check number 0505 also presented a driver's license with the number 17957299, with a date of birth of 9–24–80. He indicated that the driver's license number and date of birth are the same as those on the original application for the checking account. He related that the address on that check was 1814 Sena, Denton, Texas 76201. He also repeated the same information with respect to check number 0554.

Meldrum testified that when he looked at a driver's license to put its number on a check, he looked at the photograph on the license to see if it matched the person who was standing in front of him, and that he looked at it carefully. He said that he would not have looked at the photograph carefully if it was of a regular customer, but he could not say if appellant was a regular customer. He could say only that the name did not ring a bell. He stated that the party presenting the second check received goods that he would not have allowed that person to take if he had known that the check would not be good. He indicated that to his knowledge the goods obtained with the two checks had not been returned or paid for.

Aretha York testified that she is with Kroger check collection. She spoke of her efforts in contacting the maker of check numbers 0526, 0505, and 0554. She said she called the telephone number on the checks, 940–243–0563. She also indicated that a letter was sent addressed to Clint Warren at 1814 Sena, Denton, Texas 76201. She acknowledged that the green cards for the certified letter were returned unsigned and that she never heard anything from Clint Warren indicating that he received the letter. She insisted that she left phone messages on a recorder and contacted a person at the phone number, but she did not know who the person was.

Mark Lauderdale testified that on January 3, 5, and 7, 2001, he was employed at Winn–Dixie number 2467. He said that when he took checks from customers, he asked them to write down their driver's license number and date of birth. He indicated that he received checks on Clint Warren's account, including check number 0587, written on January 5, 2001, in the amount of $50.60; check number 0591, written on January 7, 2001, in the amount of $50.60; and check number 0585, written on January 3, 2001, also in the amount of $50.60. Each of those checks bore the driver's license number 17957299 and date of birth 9–24–80 in Lauderdale's handwriting. He confirmed that these are the same numbers as on the original application for the checking account and that the account number on the checks is the same as that on the original application. He also said that the expiration date for the driver's license that was presented to him, 2002, is the same as that noted in the original application for the checking account.

Lauderdale said that he looks at the driver's license when he copies down the information and compares it to the person standing in front of him. He indicated that he tries to do that carefully, but that he would not know if the driver's license were a fake. He said that, in this case, if he had thought that the person who was presenting the check was not the same

person whose picture was on the driver's license, he would not have let him or her have the goods, nor would he have sold the goods if he had known that the check was not good. He related that to his knowledge the check writer had neither returned nor paid for the goods.

Rick Johnson testified that he is a check recovery manager for Winn–Dixie. He said that when the bank returns checks for insufficient funds, they are initially sent back to the store for collection, but that if the store is unsuccessful in its collection efforts, the checks are returned to the division level for further collection efforts. He identified a letter addressed to Clint Warren, 1814 Sena, Denton, Texas 76201 that was sent by certified mail and returned unclaimed. Johnson confirmed that the store never received payment on check numbers 0585, 0591, and 0587, and that to his knowledge the goods were not ever returned. He stated that he did not intend for the check writer to receive goods without paying for them.

Faith Renee Thilman returned to testify that each check was presented to the bank within thirty days. She also revealed the amount of the negative balance in the account at the time each check was written and identified the bank markings for insufficient funds on the checks.

After the State rested, appellant indicated that he had elected not to testify. Randolph Starr returned to identify appellant's Texas driver's license and the Texas identity card issued to appellant's brother, Matthew Wayne Warren. Starr indicated the number on the identification card is 17432758 and that Matthew Wayne Warren was in custody at the time of appellant's trial.

Appellant and the State stipulated that the number on all of the documents was appellant's driver's license number and that only one check bore the date of birth of Matthew Wayne Warren. The trial court did not convict appellant in connection with the check that bore Matthew Wayne Warren's date of birth. Applying the pertinent standards of review as set forth above, we hold that the evidence is legally and factually sufficient to support both convictions.

■ Appellant contends that the evidence is insufficient to show that he wrote the checks. We disagree. Someone opened the checking account with a driver's license containing appellant's driver's license number. The practice at the bank was to compare the picture on the license with the person opening the account to make sure it was the same person. All of the returned checks bore the number of appellant's driver's license number and date of birth, except for one check that had his brother Matthew's date of birth on it. The clerk who received that check testified that someone from Albertson's office wrote the date of birth on the check but she did not know who. As previously noted, the trial court did not convict appellant with respect to this check. Although none of the clerks was able to identify appellant in court as the person who had presented them the check or checks, most of the clerks who received the checks testified that they compared the picture on the driver's license presented with the person who was presenting the check to make sure that it was the same person. This constitutes sufficient circumstantial evidence to establish appellant as the person who presented the checks.

Appellant seems to argue that the evidence is insufficient to prove identity because there was no in-court identification and because of the possibility that his brother Matthew, who was in jail at the time of trial, might have presented the checks. With respect to his contention

that there must be a positive in-court identification, he relies upon the cases of *United States v. Hawkins*, 658 F.2d 279 (5th Cir.1981) and *Bickems v. State*, 708 S.W.2d 541 (Tex.App.-Dallas 1986, no pet.). In each case, the court held that an uncertain in-court identification will not support a conviction where that is the only evidence offered on the issue of identity. *Hawkins*, 658 F.2d at 289; *Bickems*, 708 S.W.2d at 543. But, in each case, the court also held that the evidence was sufficient to support the conviction because there was other evidence presented with respect to identity. *Hawkins*, 658 F.2d at 289; *Bickems*, 708 S.W.2d at 543. In this case there is ample evidence other than an in-court identification to support the fact-finder's finding on the issue of identity. We therefore hold that neither case is inconsistent with our opinion, and, in fact, both cases support it.

In arguing that his brother may have presented the checks, appellant appears to rely on the "alternative reasonable hypothesis construct." Formerly, in order for the evidence to be legally sufficient in circumstantial evidence cases, the evidence was required to exclude every reasonable hypothesis other than guilt. *Geesa v. State*, 820 S.W.2d 154, 157 (Tex.Crim.App. 1991). The court held in *Geesa* that the alternative reasonable hypothesis construct was no longer to be used in the appellate evaluation of the legal sufficiency of the evidence. *Id.* at 155.

■ The existence of alternative reasonable hypotheses may be relevant to, but is not determinative in, a factual sufficiency review. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App.1999). In any event, there is evidence in the record excluding any hypothesis that appellant's brother may have been the one who presented the checks. Although one of the checks presented bore Matthew Wayne Warren's

date of birth in addition to appellant's driver's license number, the clerk who examined appellant's driver's license when accepting the check indicated that she had not placed Matthew Wayne Warren's date of birth on the check, suggesting that someone in Albertson's office placed it there. The trial court did not convict appellant with respect to this check. Accordingly, appellant's contentions regarding the legal and factual sufficiency of the evidence with respect to identity are without merit.

■ Appellant also contends that the evidence is legally and factually insufficient to show that he intended to deprive the owners of property because there was no showing that he ever received any telephone or mail notices. His argument is based upon the erroneous premise that evidence in a theft by check case is insufficient to support a finding of intent to deprive the owner of property unless the State successfully presents prima facie evidence of this intent by showing that the owner has successfully contacted the maker of the check by telephone or by certified letter as provided in section 31.06 of the Texas Penal Code. That section provides that one may establish prima facie evidence of intent to deprive the owner of property if payment for the check was refused for insufficient funds within thirty days after it was issued and the issuer failed to pay the owner in full within ten days after receiving notice of that refusal. TEX. PENAL CODE ANN. § 31.06(a)(2) (Vernon Supp.2003). It further provides that notice may be actual notice. *Id.* § 31.06(b). The complaints in cause numbers CR–2001–08141–Z and CR–2001–08144–Z were filed on November 8, 2001. While it is unclear when appellant was arrested, the record reflects that it was more than ten days before trial, so appellant would have had notice of the com-

plaints more than ten days before trial. The complaints would have given him notice that the bank had not honored the checks. The evidence reflects that as of the trial, the checks had not been paid. Consequently, the State presented prima facie evidence that appellant intended to deprive the owners of property. The statute indicates that the certified mail notice is an alternative to actual notice in establishing prima facie evidence of intent to deprive the owner of property. *Id.*

We also note that section 31.06 of the penal code provides that nothing in the section prevents the prosecution from establishing the requisite intent by direct evidence. *Id.* § 31.06(d). The evidence reflects that appellant made one deposit in the checking account, in addition to his original penny deposit, then made numerous ATM withdrawals and wrote numerous checks that together were far in excess of the amount of his checking account balance. We hold that this evidence is sufficient, without the aid of any presumption, to support a finding that appellant had the required intent. Appellant makes no argument that the direct evidence of intent contained in the record is insufficient. Appellant's argument with respect to the issue of intent is without merit.

■ Appellant contends that the State offered no proof of the property alleged to have been appropriated without the owners' consent or of its value and that without such proof the evidence is insufficient to support his conviction. Contrary to appellant's contention, the evidence reflects that appellant received groceries or other grocery store items and cash and gives the value of the items and cash that he obtained by setting forth the amount of the checks that were presented. Appellant's argument regarding the property and its value is without merit. We overrule appellant's points.

The judgments are affirmed.

DAUPHINOT, J. filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

Each of the informations alleged that Appellant wrote numerous bad checks. As the majority points out, not all of the clerks could testify that the checks were presented by the person whose picture appeared on the driver's license they were shown, and no clerk could identify Appellant as the presenter of the checks. In addition, no one could testify that Appellant was given the section 31.06(b) notice. *See* TEX. PENAL CODE ANN. § 31.06(b) (Vernon Supp.2003). Thus, the evidence does not connect Appellant to all of the alleged bad checks. Because the majority does not address whether the State must prove notice to Appellant, whether the State must prove all of the allegations with respect to each of the alleged bad checks, or whether the State must prove only a sufficient number of checks to reach $20.01 or more, I respectfully dissent.