Opinion issued March 9, 2006
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00932-CR
NO. 01-04-00933-CR




TOMMIE LEE HUNTER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause Nos. 913564 and 913565




MEMORANDUM OPINION

          Appellant, Tommie Lee Hunter, the paternal grandfather of the complaining
witness, pleaded not guilty to two felony indictments alleging aggravated sexual
assault of a child. See Tex. Pen. Code Ann. § 22.02(a)(1)(B)(2)(B), (e) (Vernon
Supp. 2005). A jury found appellant guilty and assessed punishment at 10 years’
community supervision for each offense. In three issues on appeal, appellant
contends that the evidence is factually insufficient to support his convictions, that the
trial court erred by finding complainant competent to testify, and that the trial court
erred by admitting complainant’s out-of-court statements. We affirm. Background
          Complainant’s parents divorced when she was two years old. Complainant
visited her father pursuant to regularly scheduled visitation, which included frequent
visits to her father’s parents, appellant and his wife, who lived nearby. 
          Complainant was four years old on September 20, 2001 when she made an
outcry statement to her mother. While traveling in her mother’s car with her older
brother and their three-year-old cousin, complainant told her mother that her
grandfather, or “paw-paw,” had been “bad.” The mother continued driving, but
inquired further of complainant, who replied that appellant had placed his finger in
her “tee tee” and in her “butt” and that she asked him to stop because he was hurting
her. After learning this information, complainant’s mother pulled her car to the side
of the road and telephoned her ex-husband, appellant’s son, from a pay phone to
arrange to speak with him about appellant. 
          In the few days that followed, complainant was able to clarify that “paw-paw”
was her “daddy’s daddy.” When asked when her grandfather did these things,
complainant could say only “the other day”; her mother explained that complainant’s
sense of time was not fully developed at that point and that she sometimes confused
“yesterday” and “tomorrow,” for example. Complainant’s mother did not pursue any
further inquiries of complainant, but reported the incident to Children’s Protective
Services within a few days.
          On October 5, 2001, while her mother was transporting her to the Children’s
Assessment Center for further investigation of the incident, complainant told her
mother that she knew that she was supposed to tell the interviewer about the time that
appellant licked her “tee-tee.” This was the first time that complainant used these
words in describing the assault to her mother. Complainant’s mother also reported
that a teacher had contacted her to report that complainant had informed the teacher
that “something bad” had happened to her and to inquire whether the mother was
aware of an incident. 
          On October 5, 2001, complainant narrated to a forensic interviewer for the
Children’s Assessment Center that complainant’s grandfather had been helping her
“to potty” when he lifted her to a counter in the bathroom and licked her “tee-tee”
with his tongue. In addition, he put his finger insider her “tee-tee,” which hurt and
“felt like a bone,” and also grabbed her hand, put it on his “tee-tee,” and “put his
finger on his tee-tee.” Complainant told the interviewer that appellant licked his
finger, put it in her “butt” and moved, or “strolled,” the finger around, and that
appellant said he would stop when she asked him not to do it anymore. 
          Using a female, anatomically correct doll provided by the interviewer,
complainant identified the vaginal area of the doll as the “tee-tee.” When asked to
identify the “tee-tee” on a male, anatomically correct doll provided by the
interviewer, complainant opened the doll’s pants and pointed to its male sexual organ,
which she described as a “roundy thing” that was “hard and squishy” and, using her
own finger to demonstrate, “extended straight out.” The forensic interviewer
explained that she had been trained to ask open-ended questions and to avoid leading
questions when interviewing children who report abuse and used those techniques in
interviewing complainant. 
          Complainant was five years old on April 23, 2002, when she spoke with the
physician who served as the medical director of the Children’s Assessment Center at
that time. Complainant explained that she was visiting the center because she “had
an emergency” and “didn’t want [her] grandpa to put his fingers in [her] tee-tee.” 
Complainant also told the physician that appellant told complainant to kiss his “tee-tee” and that he “put his tee-tee in [her] mouth.” The physician’s examination of
complainant’s vagina and anus showed normal results, with no indication that the
area had been injured. The physician also explained that genital and anal tissue heals
very rapidly, that 70 to 80 percent of cases assessed involve no physical evidence of
injury, and that penetrating either the genital area or the anus with a finger often
leaves no indication of injury because the tissue is normally healed completely of any
injury within 72 hours. Even if examined close to the time of such an assault, a
physician “would very likely not see injury.” 
          Complainant was “seven and a half” years old on August 11, 2004, when the
case was called to trial. Just before trial began, the trial court conducted a hearing to
determine complainant’s competency and ruled that she was competent to testify. 
During trial, when the prosecutor asked complainant if she knew why she was in
court, she replied that she did and gave as her reason, “Because my paw-paw did
something bad to me.” The prosecutor then asked, “Now, when you say your paw-paw did something bad, what did your paw-paw do?” Complainant then replied, “I
don’t know if it was a dream or not, because it was such a long time ago. So, I don’t
know.” But, when asked what she thought happened, complainant stated, in response
to a series of questions, that her grandfather “touched” her “bad spot,” with “his
finger” and “inside” and “licked his finger first.” In response to a second series of
questions, complainant stated that her grandfather “touched” her “bottom” on the
“inside” with “his finger,” which he again “licked” first. Complainant stated that the
touching of her “bad spot” occurred first, and that her grandfather licked his finger
between the two touchings. When asked “What else did your paw-paw have you do?”
complainant replied, “I think he made me touch his bad spot and . . . kiss his bad
spot.” 
          During questioning by the prosecutor using anatomical dolls, complainant
identified the undressed doll’s male sexual organ as its “bad spot,” and explained that
she thought that her grandfather had unzipped his trousers and that his male sexual
organ was “out of” his pants when he “made [her] touch it and kiss it.” When asked,
“So, it’s outside the zipper and he made you kiss it as well, right?” complainant said,
“Yes. I think it was a dream or not.” 
          When the prosecutor asked whether complainant’s paw-paw or grandfather was
in the courtroom, complainant stated he was, pointed to appellant and stated, “I think
it’s him. I don’t know. Because he wasn’t that old when I saw him last.” 
Complainant agreed, however, that appellant looked like her grandfather. In cross-examination, appellant’s counsel attempted to impeach complainant because of her
references to “dreams.” When counsel asked whether she was “just making [her
story] up,” however, complainant replied, “I’m not making it up. I don’t think that—I
don’t know if it’s a dream or not because it was so long ago.” Under further cross-examination aimed at impeaching complainant’s ability to distinguish a bad dream
from reality, she recalled dreaming that she was “at ballet,” when her mother
suddenly disappeared behind a fence, but she realized, on waking up, that it was only
a bad dream and was not real.
          As part of the investigation conducted at the Children’s Assessment Center, a
Houston Police Officer interviewed appellant, who appeared at the center voluntarily
in response to the officer’s request. Appellant told the officer that he sometimes
applied medicine to complainant’s vagina when complainant asked this of him. The
officer further stated that questioning of appellant showed that he initially denied
assaulting complainant, but then stated repeatedly that he could not recall whether he
committed the assaults because he had a drinking problem at that time. The one
exception to appellant’s pattern—denial followed by equivocation—occurred when
he adamantly denied asking complainant to kiss his male sexual organ. But, when the
officer asked whether complainant would lie about something of this nature, appellant
replied, “No, she wouldn’t lie.” 
Competency of Complainant
          In his second issue, appellant challenges complainant’s competency and
contends that the trial court abused its discretion by allowing her to testify. Appellant
bases this argument on the child’s inability to remember events that occurred when
she was four years old and her statement that she believed that the incident might
have been a dream. Appellant further contends that the trial court erred by ruling that
complainant was competent to testify because the forensic investigator who
interviewed complainant testified that complainant could not distinguish between the
truth and a lie and also denied that the sexual incidents were real.
          The Rules of Evidence presume that every person is competent to be a witness,
except as stated in rule 601. See Tex. R. Evid. 601(a). Rule 601(a)(2) states that a
child is competent to testify unless the trial court determines, after a hearing, that the
child does not possess sufficient intellect to relate the transactions about which she
is being interrogated. Tex. R. Evid. 601(a)(2); see Berotte v. State, 992 S.W.2d 13,
17 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d) (en banc). Rule 601(a)(2) vests
the trial court with great discretion to determine the competency of a child-witness,
and we will not overturn the trial court’s ruling unless the appealing party
demonstrates that the trial court abused its discretion. Villareal v. State, 576 S.W.2d
51, 57 (Tex. Crim. App. 1978); Fields v. State, 500 S.W.2d 500, 502 (Tex. Crim.
App. 1973); see Berotte, 992 S.W.2d at 18. 
          There is no minimum age at which a child is considered incompetent to testify. 
Fields, 500 S.W.2d at 502; see Berotte, 992 S.W.2d at 17-18 (rejecting contention
that trial court abused its discretion in ruling four-year-old child competent to testify). 
When reviewing the trial court’s determination, we consider the entire testimony of
the witness and not merely her responses at the hearing. Fields, 500 S.W.2d at 503;
Berotte, 992 S.W.2d at 17. Confusing and inconsistent responses from a child will
not categorically preclude competency to testify, although these are relevant factors
that affect the child’s credibility, see Berotte, 992 S.W.2d at 17, and, thus, the weight
the jury gives the child’s testimony. See, Johnson v. State, 23 S.W.3d 1, 8 (Tex.
Crim. App. 2000). Although a child need not understand the obligation of the oath
recited by adult witnesses, the child must understand the obligation to tell the truth
and not to lie. Id. at 18; see Fields, 500 S.W.2d at 502; Upton v. State, 894 S.W.2d
426, 429 (Tex. App.—Amarillo 1995, pet. ref’d); Macias v. State, 776 S.W.2d Tex.
255, 256 (Tex. App.—San Antonio 1989, pet. ref’d). The trial court must, therefore,
impress upon the child the importance and duty of telling the truth. Gonzales v. State,
748 S.W.2d 510, 511 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d). 
          This Court’s en-banc opinion in Berotte upheld a trial court’s competency
ruling by noting that a four-year-old child was able to respond accurately to the trial
court’s questions about her name and the names of her family members, to state that
she was wearing a skirt, and to reply to a question about the weather by stating that
it was not raining. Berotte, 992 S.W.2d at 18. The seven-and-one-half year old
complainant here was likewise able to state her name and age correctly, to recall the
name of the school she attended the previous year, and to reply that she was not yet
in school, but that she would begin attending second grade in a new school year on
the following day. She responded to questions by the court concerning whether she
understood the difference between telling the truth and telling a lie by stating that
“telling a lie” means, “You are lying; you don’t tell the truth.” Complainant replied
that the trial judge would have been lying if he said his shirt was blue and stated that
she understood the importance of telling the truth always. 
          The remainder of complainant’s testimony, which began by her being
administered the oath of witnesses at the witness stand, confirms her competency. In
addition to repeating information similar to that provided to the trial court during her
competency hearing, complainant provided detailed facts, for the benefit of the jury,
that further demonstrated her competency. These related to the month of her next
birthday, her cat named Spike, her bike-riding skills, her favorite food, and the names
of seven characters she had seen the preceding summer while at Disney World. In
recounting the details of her grandfather’s assaults, complainant’s testimony
corresponded to the details she had provided to her mother and to the forensic
investigator at the Children’s Assessment Center, when she was only four years old
and to the physician-director of the center, when she was five years old. 
          As noted above, when the prosecutor first questioned complainant about why
she was in court and the “something bad” that her “paw-paw” had done, complainant
replied that she did not know “if it was a dream or not, because it was such a long time
ago.” Later in the prosecutor’s direct examination of complainant, the prosecutor
asked her, “What else did your paw-paw have you do?”, to which she replied, “I think
he made me touch his bad spot and . . . and kiss his bad spot.” The prosecutor
confirmed, “[T]hat’s what you didn’t want to talk about, right?” Then, after
complainant correctly identified the eyes, mouth, arm, hand, and fingers of a male,
anatomically correct doll, the prosecutor removed both the pants and underwear from
the doll and asked complainant to point to the doll’s sexual organ. After complainant
complied, the following exchange occurred:
[PROSECUTOR]: Now, [complainant’s name,] when you say he made
you touch it and kiss it, were his pants all the way down or not?
 
[COMPLAINANT]: Not, I think.
 
[PROSECUTOR]: Well, if they weren’t all the way down, how did you
see his bad spot?
 
[COMPLAINANT]: I think he unzipped his pants and showed me, I
think.
 
[PROSECUTOR]: Okay. So his pants were unzipped and his bad spot
was out of his pants?
 
 [COMPLAINANT]: Yes, I think so.
 
 [PROSECUTOR]: Okay.
 
          . . . .
 
[PROSECUTOR]: So, it’s outside the zipper and he made you kiss it as
well, right?
 
[COMPLAINANT]: Yes. I think it was in a dream or not [sic].
 
          During cross-examination, appellant’s counsel focused on complainant’s two
references to “a dream,” excerpted above, as well as complainant’s inability to
remember, on the day of trial, that she told the details of the assaults to her mother. 
During that cross-examination, however, when asked whether she had fabricated her
story, complainant replied: “I’m not making it up. I don’t think that – I don’t know
if it’s a dream or not because it was so long ago.” Moreover, complainant was able
to recount an actual bad dream, about believing that her mother had disappeared, that
she realized was not true once she awoke. 
          Concerning complainant’s inability to remember other events that occurred
when she was four years old, including playing with her cousins, which the record
reflects she did at that age, we note again that complainant’s trial testimony conformed
to all the details that she had provided to her mother and the forensic examiner shortly
after the assault and to the physician on staff at the Children’s Assessment Center
approximately six months after the assault. The record thus reflects that, although
complainant could not remember the ordinary events of her life, she remembered her
grandfather’s “bad” behavior.
          After considering complainant’s testimony during both the competency hearing
and the trial, see Fields, 500 S.W.2d at 503; Berotte, 992 S.W.2d at 29, we conclude
that the trial court did not abuse its discretion in ruling that she was competent to
testify at trial. Complainant’s responses were never inconsistent, and were direct,
clear, and forthright. Despite her references to the possibility that she dreamed the
assaults, complainant attributed that possibility to the length of time that had elapsed
since they had occurred. Moreover, she denied fabricating her story when asked if she
had. Under the record and circumstances presented here, we conclude that
complainant’s inability to remember other events from her childhood when she was
four years old and her uncertainty about whether she had dreamed the assaults by her
grandfather did not preclude competency to testify, although they were relevant factors
for the jury in assessing her credibility and the weight to accord her testimony. See
Johnson, 23 S.W.3d at 8; Berotte, 992 S.W.2d at 17. 
          Appellant’s final challenge to complainant’s competency focuses on portions
of the testimony of the forensic investigator who interviewed complainant. Appellant
contends that these portions reveal that the investigator acknowledged that
complainant was unable to distinguish between the truth and a lie and also denied that
the sexual incidents were real. 
          The record reflects that the forensic investigator stated that she did not begin her
interview of complainant by ascertaining her capacity to distinguish between a lie and
the truth. As the investigator explained, however, beginning with this questioning is
the “typical” sequence for interviewing, but forensic investigators who interview
children are also trained to follow the child’s lead and not to interrupt when a child is
“ready to talk”—lest the interviewer exhaust the child’s attention span. Because
complainant began to recount the details of the assaults on her own, shortly after the
interview began and without questioning by the forensic investigator, the investigator
waited, until after complainant had finished narrating the assaults, to discern her
ability to distinguish truth and falsehood. At the close of her direct examination by
the State, the investigator stated that she had established that complainant “knew the
difference between a truth and a lie.” 
          Appellant’s counsel cross-examined the forensic investigator extensively and,
in addition, recalled her for further cross-examination, during which she supplied
additional details about the questions she asked complainant concerning her ability to
distinguish between truth from a lie. During her initial testimony, the investigator
stated that she could not remember exactly “what [complainant] said about knowing
the difference between a truth and a lie.” On refreshing her memory, the forensic
investigator acknowledged that when she questioned complainant about the difference
between the truth and a lie, complainant stated that “to lie is the truth is the truth,” and
then that “a lie is the truth is a lie,” and, finally, “the truth is the lie.” After these
responses, when the forensic investigator took a different approach by asking
questions to determine complainant’s ability to distinguish between what was real and
was not real, complainant twice replied “no,” when asked whether the events
described by the investigator were real, and twice simply ignored the investigator’s
questions. Nevertheless, the investigator did not deviate from her initial testimony
that complainant knew the difference between the truth and a lie. Instead, she
attributed complainant’s responses to having exhausted her attention span, as
demonstrated by complainant’s posing questions about things on the wall of the
examining room and asking to leave to return to her parents. 
          Under the record and circumstances presented here, we conclude that
complainant’s inconsistent responses to the forensic investigator’s questioning her
about her ability to distinguish truth from a lie, or reality from unreality, did not
preclude her competency to testify, although they were relevant factors for the jury in
assessing her credibility and the weight to accord her testimony. See Johnson, 23
S.W.3d at 8; Berotte, 992 S.W.2d at 17. Accordingly, the trial court did not abuse its
discretion by ruling that complainant was competent to testify and by permitting her
to testify.
          We overrule appellant’s second issue.
Complainant’s Out-of-Court Statements
          In his third issue, appellant contends that the trial court abused its discretion by
permitting the State to introduce hearsay statements by complainant through the
testimony of her mother, the forensic investigator, and the physician who spoke with
complainant at the Children’s Assessment Center. “Hearsay” is a statement, other than
made by the declarant while testifying at the trial or hearing, that is offered in evidence
for its truth. Tex. R. Evid. 801(d). Hearsay is inadmissible unless a statute or the
Rules of Evidence authorizes admission, but hearsay admitted without objection may
be probative evidence. See Tex. R. Evid. 802. Article 38.072 of the Texas Code of
Criminal Procedure creates an “outcry exception” by which an ordinarily inadmissible,
out-of-court statement may be admissible, provided certain conditions are met, in
prosecutions for sexual offenses committed as described in chapter 21 of the Penal
Code, as here, against a child who is 12 years of age or younger. See Tex. Code
Crim. Proc. Ann. art. 38.072 §§ 1(1), (2) (Vernon 2005). If the conditions are met,
the child’s outcry statement to the first adult (other than the defendant) to whom the
child makes a statement that describes the alleged offense will not be rendered
inadmissible because of the hearsay rule. Id.; see Carty v. State, Nos.
01-03-01266-CR, 01-03-01267-CR, 2005 WL 1837938 at *7 (Tex. App.—Houston
[1st Dist.] Aug. 4, 2005, no pet.) (on rehearing); Chapman v. State, 150 S.W.3d 809,
812 (Tex. App.—Houston [14th Dist. 2004, pet. ref’d). A reviewing court will not
disturb the trial court’s evidentiary rulings under article 38.072 unless the trial court
abused its discretion by reaching a decision that falls outside the zone of reasonable
disagreement. See Garcia v. State, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990);
Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). In applying the
outcry exception to the trial of an adult, the Court of Criminal Appeals has held that
the outcry statement must be one that “in some discernible manner describes the
alleged offense” and must be more than words that “give a general allusion that
something in the area of child abuse was going on.” Garcia, 792 S.W.2d at 91. 
          Appellant asserts several arguments on appeal to challenge admissibility of the
outcry statements made by complainant to her mother, the forensic investigator at the
Children’s Assessment Center, and the physician and medical director of the
Children’s Assessment Center. In the trial court, however, the only basis on which
appellant urged the trial court to rule that the statements were inadmissible was that
complainant was not competent to testify. Appellant conditioned his objections,
therefore, on a determination that complainant was not competent to testify. We held
in our disposition of appellant’s second issue, however, that the trial court did not
abuse its discretion by permitting complainant to testify because she adequately
demonstrated her competency. Appellant’s only objection in the trial court lacks
merit, therefore, and appellant has not preserved any other contentions for our review. 
See Tex. R. App. P. 33.1. Because appellant did not object otherwise to the out-of-court statements by complainant, those statements became probative evidence on
which the jury could properly rely. See Tex. R. Evid. 802. 
          We overrule appellant’s third issue.
Factual Sufficiency of the Evidence
          In his first issue, appellant contends that the evidence is factually insufficient
to sustain his convictions for aggravated sexual assault of a child. In Cause No.
913564, the State had to prove that, on or about September 1, 2001, appellant
intentionally or knowingly caused the penetration of complainant’s sexual organ by
any means. In Cause No. 913565, the State had to prove that, on or about September
1, 2001, appellant intentionally or knowingly caused the penetration of complainant’s
anus by any means. 
          In a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set aside the verdict only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). In conducting our review, we
must consider the evidence that the appellant contends most undermines the jury’s
verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). We may not
substitute our own judgment for the factfinder’s judgment. Jones v. State, 944 S.W.2d
642, 648 (Tex. Crim. App. 1996). Unless the available record clearly reveals that a
different result is appropriate, we defer to the jury’s determination concerning the
weight to place upon conflicting testimony, because resolution of facts often turns on
evaluation of credibility and demeanor. Johnson, 23 S.W.3d at 8. 
          Appellant focuses on three aspects of complainant’s testimony in contending
that the evidence is factually insufficient to support his convictions. These aspects are
complainant’s statements that the abuse might have been a dream, her inability to
remember events that occurred when she was four years old, and her lack of definitive
identification of appellant as her abuser. 
          As addressed above, complainant’s statements that the abuse might have been
a dream and her inability to remember events that occurred when she was four years
old, with the exception of her grandfather’s assaults, were factors that affected her
credibility and the weight to give her testimony. See Johnson, 23 S.W.3d at 8;
Berotte, 992 S.W.2d at 17. 
          With respect to identification, appellant contends that complainant was
“uncertain” when she identified him at trial as the person who assaulted her. A
conviction will not be upheld when the only identification of the accused is an
uncertain, in-court identification. See Johnson v. State, 978 S.W.2d 703, 707 (Tex.
App.—Corpus Christi 1998), aff’d 23 S.W.3d 1 (Tex. Crim. App. 2000) (holding that
identification was not “clear and unequivocal”); Warren v. State, 91 S.W.3d 890, 896
(Tex. App.—Fort Worth 2002, no pet.); Bickems v. State, 708 S.W.2d 541, 543 (Tex.
App.—Dallas 1986, no pet.). As both Warren and Bickems recognized in affirming
convictions, however, other evidence can establish identity. Warren, 91 S.W.3d at
896; Bickems, 708 S.W.2d at 543. 
          At the conclusion of complainant’s direct examination, the prosecutor asked
complainant if her grandfather or “paw-paw” was present in the courtroom. 
Complainant replied that he was, pointed to him, and stated, “I think it’s him. I don’t
know. Because he wasn’t that old when I saw him last.” The record also reflects,
however, that complainant had not seen appellant since the assaults, which occurred
approximately three years before the trial. Despite that lapse of time, complainant
agreed that appellant looked like her grandfather. 
          Even if we were to construe complainant’s in-court identification as uncertain,
ample, factually sufficient evidence supports the identity issue. Just after her outcry
to her mother, complainant was able to clarify that her “daddy’s daddy,” i.e., appellant,
and not a different grandfather, had assaulted her. Complainant’s mother also
identified appellant as complainant’s grandfather during trial. Moreover, during his
interview with the police officer, appellant identified himself as complainant’s
grandfather. 
          Having conducted a neutral review of the evidence, in particular the evidence
that appellant contends is factually insufficient to support his convictions, specifically,
complainant’s statements that the abuse might have been a dream, her inability to
remember events that occurred when she was four years old other than the assaults,
and her allegedly uncertain identification of appellant as her abuser, we defer to the
jury’s assessment of complainant’s credibility. Having reviewed the evidence in the
proper light, we cannot say that the evidence supporting the jury’s finding appellant
guilty of both offenses is so weak that the verdict is clearly wrong and unjust. We
therefore hold that the evidence is factually sufficient to support appellant’s
convictions.
          We overrule appellant’s first issue.
Conclusion 
          We affirm the judgments of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice
                                                             
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).