

# NUMBER 13-09-354-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

MARK PEREIDA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                             Appellee.

---

### On appeal from the 214th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela**
**Memorandum Opinion by Justice Vela**

A jury convicted appellant, Mark Pereida, of murder, *see* TEX. PENAL CODE ANN. §

19.02(b)(1), (2) (Vernon 2003), and aggravated assault with a deadly weapon. *See id*. §§

22.01(a)(1); 22.02(a)(2) (Vernon Supp. 2009).  The jury assessed punishment at forty years' and fifteen years' imprisonment, respectively, plus a $2,500 fine for each offense. The sentences were ordered to run concurrently.  Appellant brings seven issues for review. We affirm.

## I. Factual Background

### A. State's Evidence

On June 19, 2008, Rachel Adame called Eva Ybarra and told her "that there was going to be a fight."  After receiving the call, Eva, Maria Rosales, and F.T.[1] went to an apartment complex at 10th and Booty Streets in Corpus Christi.  About that time, Misty Torres, V.A.,[2] Maricela "Chata" Ybarra, Jose Cardenas, appellant, and appellant's brother, Michael Pereida, went to the same complex in Misty's vehicle. When Misty's group arrived, a fight erupted, involving six to eight girls.

Jose Riojas and Maria Cortez were present during the fight.  Riojas testified that after the fight, three men "pointed the guns at us" and "cock[ed] their guns."  He said the three men "started approaching us and then they backed up."  He saw "a flash" from one of the guns, and he identified appellant and Cardenas as two of the three men who were pointing the guns.  Cortez saw her boyfriend, Jose Gomez,[3] get shot by Michael Pereida. She identified appellant and Cardenas as being present during the fight and said, "They

---

[1]F.T. is a child witness.

[2]V.A. is a child witness.

[3]Gomez's autopsy report showed he died from a single gunshot wound to his chest.

2

had guns. They were opening fire, too."

Maria Rosales, who was present during the fight, testified that Michael Pereida fired a "warning shot," and appellant "started firing randomly." F.T. testified that when nobody listened to Michael's warning shot, "they just started going off with their weapons." She stated, "I seen the gunfire. . . . From both [of them]." She said that Michael Pereida fired five shots from a revolver and that appellant fired six shots from an "automatic gun."

A.S.,[4] J.S.,[5] and Rachel Adame arrived at the fight together. A.S. testified that after the fight started, he saw "[t]wo dudes," who "pointed [guns] at us." One of these men had a revolver. After hearing gunshots, A.S. felt a bullet hit his leg and said that it went through his leg. J.S. testified that during the fight, "a dude blind sided me. . . ." When J.S. saw the man who blind sided him "going at" A.S., J.S. "stepped forward," and the man, whom J.S. identified as appellant, pulled out "[a]n automatic" gun and got into Misty's vehicle. J.S. heard "one shot go off, and after that there were several more." Rachel testified that two people inside Misty's vehicle fired the shots out of two of the vehicle's windows.

V.A., who arrived at the complex with Misty Torres, testified that after the fight, everybody got back into Misty's vehicle and that the shooting started "[a]s we're driving away." She stated that all three men inside Misty's vehicle had guns, but she could not identify appellant as one of these men. She stated that the man in the front-passenger seat along with the man sitting behind him fired out the window. She identified Jose

---

[4]A.S. is a child witness.

[5]J.S. is a child witness.

3

Cardenas as one of the two men firing out the window. V.A. testified that Misty drove to the freeway, where "[e]verybody got off and ran. . . ." She said "the guys that had" the guns "threw the guns in the grass." She said that three people threw guns into the grass.

Investigators recovered four .25 caliber shell casings from the crime scene and one .25 caliber shell casing from inside Misty's vehicle. The five shell casings were fired from the same .25 caliber automatic weapon. A bullet hole was found in the wall of a first-floor apartment at the complex where the fight occurred. Inside that apartment, an investigator found a .38 caliber bullet fragment, which came from a revolver. No weapons were found, but a .25 caliber bullet was removed from Jose Gomez's body.

Officer Jason Smith obtained a statement[6] from appellant in which appellant admitted to being present during the fight. However, he denied having a gun and denied any involvement in the shooting.

## B. Appellant's Evidence

In the evening following the shooting, Misty Torres and Jose Cardenas went to the home of Martin Rosales, who lived with Ruby Flores, the mother of appellant and Michael Pereida. Mr. Rosales testified that Misty told him that Michael Pereida "wasn't the shooter." He stated that Misty never told him that appellant was involved in the shooting.

Appellant testified that prior to the shooting, Misty and his older brother, Michael Pereida, picked appellant up along with two females and Jose Cardenas, who had an

---

[6]During the guilt-innocence phase, the State introduced a recording of this interview into evidence as State's exhibit 9 and played it to the jury.

4

automatic weapon. Appellant testified that while in Misty's vehicle, he asked to be taken to his fiancee's house, but "I was told that I would be dropped off after they had to discuss something with one of their friends." When they arrived at the apartment complex, everybody got out of the vehicle, and the girls started fighting. Appellant said that he was not involved in the fight and did not have a gun. He said that when "they all rushed at" Michael, Michael fired a gun. Appellant said that when he and the others left the scene in Misty's vehicle, Misty was driving, Michael sat next to her, Cardenas was sitting behind Michael, the two females sat next to Cardenas, and he sat in the rear seat. Appellant testified that he believed that Michael and Cardenas fired their guns out the window. Misty drove to Morgan and Crosstown Expressway where the guns were thrown into the grass, and everybody got out except for Misty and appellant. When Misty stopped at a bank, appellant walked to his mother's house and from there, he took a bus to where his fianceé was living.

Jessica Amador testified that she and her boyfriend followed Misty's vehicle to the complex where the fight occurred. Amador joined in the fight, and when she heard the gunshots, she ran. She did not see any weapons and did not know who was doing the shooting.

Officer Jason Smith testified that J.S. identified Cardenas "as the man [he] saw out there with the gun[.]" Officer Smith stated that Eva Ybarra and Maria Rosales told him that Misty had a gun at the time of the shooting. He also testified that Mary Cortez told him that she saw only two men with guns at the time of the shooting. He said that the gun that shot A.S. "could have" been a revolver.

5

## II. Discussion

## A. Sufficiency of the Evidence

We first address issue seven wherein appellant challenges the legal and factual sufficiency of the evidence to support his convictions.

### 1. Standards of Review

"'In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" *Roberts v. State*, 273 S.W.3d 322, 326 (Tex. Crim. App. 2008) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict"; or (2) "considering conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.3d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence

6

factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*.

### 2. Applicable Law

Our review of a legal and factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti*, 273 S.W.3d at 280-81. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2). A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens another with imminent bodily injury. *Id*. § 22.01(a)(1), (2). The offense becomes aggravated assault if the person committing the assault uses a deadly weapon during the commission of the offense. *Id*. § 22.02(a)(2).

A person acts intentionally when it is his or her conscious desire to cause the result of his or her conduct. *Id*. § 6.03(a) (Vernon 2003). A person acts knowingly when he or

7

she is aware that his or her conduct is reasonably certain to cause the result. *Id*. § 6.03(b). A person's knowledge and intent may be inferred from the "acts, words, and conduct of the accused." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

A person is criminally culpable as a party if, with intent to promote or assist the commission of the offense, the person solicits, encourages, aids, directs, or attempts to aid, another person in commission of the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003). In reviewing the sufficiency of the evidence to support a defendant's participation as a party, "we may consider 'events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000) (quoting *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)).

### 3. Analysis of Sufficiency Challenges

A rational jury could have determined the following from the evidence: (1) appellant went with Michael Pereida and Cardenas to a fight; (2) appellant had an automatic weapon and encountered A.S. during the fight; (3) Riojas testified that after the fight, three men, including appellant and Cardenas, pointed guns at the persons at the scene, cocked their guns, approached them, and then backed up; (4) Maria Rosales, F.T., and Maria Cortez testified that appellant and Cardenas fired their weapons; (5) A.S. was shot through the leg, and Gomez died as a result of the gunfire; (6) Cortez testified that Michael shot Gomez; (7) the four .25 caliber shell casings recovered from the scene and the .25 caliber shell casing recovered from Misty's vehicle were fired from the same automatic weapon; and (8) Gomez was killed by a .25 caliber bullet. Furthermore, the evidence showed that appellant fled the scene after the shooting. A fact finder may draw an inference of guilt

from the circumstance of flight from the crime scene. *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007). In addition, appellant's attempt to conceal his weapon by throwing it in the grass is probative of wrongful conduct and is also a circumstance of guilt. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2007) (stating that "[a]ttempts to conceal incriminating evidence, are probative of wrongful conduct and are also circumstances of guilt.").

Controverting evidence showed that: (1) no weapons were recovered; (2) no one saw appellant shoot anyone; (3) there was no fingerprint evidence linking appellant to any of the shell casings; (4) appellant denied having a weapon or shooting anyone; (5) appellant testified that when he got into Misty's vehicle, he did not know they were going to a fight and asked to be taken to where his fiancee' lived; (6) V.A. testified that the shooting started as Misty was driving away from the scene; (7) V.A. could not identify appellant as one of the shooters; (8) Officer Smith testified that J.S. identified Cardenas "as the man [he] saw out there with the gun"[;] (9) Cortez saw Gomez get shot by Michael Pereida; (10) Misty never told Martin Rosales that appellant was involved in the shooting; and (11) F.T. testified that appellant left the crime scene in a vehicle with a girl named "Jessica."

Even though appellant denied having a weapon or shooting anyone, the jury apparently chose to believe the witnesses' testimony identifying him as one of the shooters, and we must give due deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (concluding that the jury is in the best position to evaluate the witnesses' credibility and to weigh the evidence). Even though the witnesses testified to different versions of the events surrounding the shooting of both Gomez and A.S., a jury is free to accept one version of the facts and to reject

9

another, or to reject any part of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Furthermore, a verdict is not manifestly unjust merely because the jury resolved any conflicting views of the evidence in the State's favor. *See Cain*, 958 S.W.2d at 408-09.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient for a rational jury to find appellant guilty as a party to Gomez's murder and to the aggravated assault of A.S. beyond a reasonable doubt. After reviewing all of the evidence in a neutral light, we conclude that the evidence supporting the convictions is not so weak that the fact-finder's determination is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. We hold that the evidence is legally and factually sufficient to support the convictions. Issue seven is overruled.

**B. Admission of Evidence**

In issue one, appellant contends the trial court erred by admitting evidence of his alleged gang affiliation. During the State's cross-examination of appellant at the guilt-innocence phase, the prosecutor asked him, "[W]ould you agree with me that on [the day of the shooting] you did not have [a] red star with a P in the middle of it?" He replied in the affirmative and stated that he got the star on his face "[w]ay later on afterwards." When the prosecutor asked him, "And is that what your little group does . . . to signify the taking of a life?", he said, "No, sir." Appellant explained that the star "stands for the five brothers that I have. . . ." When the prosecutor asked him, "Doesn't that red P really stand for the Pyru gang . . . you-all are members of?", he said, "No, sir. You're judging a book by its

10

cover now, sir." At that point, appellant's defense counsel objected.[7]

Rule 33.1 of the Texas Rules of Appellate Procedure states in part: "(a) As a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion. . . ." TEX. R. APP. P. 33.1(a)(1). "'[T]he party complaining on appeal . . . about a trial court's admission, . . . of evidence must, at the earliest opportunity, have done everything to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question.'" *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (citing *Martinez v. State*, 91 S.W.3d 331, 335-36 (Tex. Crim. App. 2002)); *see Lagrone v. State*, 942 S.W.2d 602, 617-18 (Tex. Crim. App. 1997) (finding objection untimely when defendant's counsel objected after prosecutor had spoken only four words following the testimony in question). In this case, any evidence of appellant's alleged gang affiliation became apparent when the prosecutor asked appellant, "Doesn't that red P really stand for the Pyru gang . . . you-all are members of?" Counsel did not object until after appellant answered the question. Accordingly, we conclude that appellant failed to preserve error because he did not make a timely objection. *See* TEX. R. APP. P. 33.1(a)(1); *Lagrone*, 942 S.W.2d 617-18. Even if appellant had timely objected, the admission of inadmissible evidence is rendered harmless if the same or similar evidence is introduced without objection elsewhere during trial. *Willis v. State*, 785 S.W.2d 378, 383 (Tex. Crim. App. 1989). Here, after the trial court ruled on the objection, the prosecutor asked appellant, "Are you denying the membership of your family members with the Pyru street gang?" To this, he said, "Sir, I'm not part of that, sir." When the prosecutor asked him,

---

[7]Appellant's defense counsel objected as follows: "Your Honor, when the trial began we got notice of 404(b). [The prosecutor] sent me the notice. He never mentioned one thing about my client being in a gang, and now he's bringing that up. And we requested that. After hearing the prosecutor's response, the trial court stated, "I'll allow you some leeway because of that testimony."

"You're not part of that?", he said, "No, sir."  Counsel did not object to this testimony and did not obtain a running objection.  Issue one is overruled.

## C. Polygraph Evidence

In issue two, appellant contends the trial court erred by allowing testimony elicited by the State about the lack of polygraph evidence, which inferred that he had taken and failed a polygraph test.  During the State's guilt-innocence case-in-chief, the prosecutor questioned[8] Officer Jason Smith about the admissibility of polygraph results.[9]  At no time did appellant object to the testimony with respect to any polygraph examination or the results thereof.  Because appellant did not object to the testimony, he has not preserved this issue for appellate review.  *See* TEX. R. APP. P. 33.1(a)(1); *see also Sanchez v. State*, 222 S.W.3d 85, 89-90 (Tex. App.–Tyler 2006, no pet.) (stating that "failure to object to polygraph evidence waives the error."); *Berotte v. State*, 992 S.W.2d 13, 17 (Tex. App.–Houston [1st Dist.] 1997, pet. ref'd) (stating that "admission of testimony about polygraph results is not considered reversible error in the absence of an objection.").  Issue two is overruled.

## D. Restraint of Appellant and Co-Defendant

In issue three, appellant contends the trial court erred by ordering himself and his

---

[8]Specifically, the prosecutor asked Officer Smith the following:

Prosecutor:     Detective Smith, are polygraphs admissible in court?

Officer Smith:  No, they are not.

Prosecutor:     So any results of polygraphs cannot be brought up—if taken by a party in any case, cannot be brought up in evidence.  Is that correct?

Officer Smith:  Not that I'm aware of.

No objection was lodged to this testimony.

[9]The court of criminal appeals recently stated that the results of a polygraph test are not admissible in a Texas criminal proceeding.  *Nesbit v. State*, 227 S.W.3d 64, 66 n.4 (Tex. Crim. App. 2007).

co-defendant, Jose Cardenas, to be shackled[10] during their joint trial and that the jury could hear the noise of the shackles. The Fifth and Fourteenth Amendments to the United States Constitution prohibit the use of physical restraints visible to the jury unless the trial court in its discretion finds that they are justified by an essential State's interest such as physical security, escape prevention, or courtroom decorum. *Deck v. Missouri*, 544 U.S. 622, 628 (2005). However, in *Peretz v. United States*, 501 U.S. 923, 936 (1991), the Court held that most basic rights of criminal defendants are subject to waiver. Here, appellant did not object to the use of shackles or restraints in the jury's presence or that the jurors could hear the shackles or restraints. Thus, the complaint is waived. *See* TEX. R. APP. P. 33.1(a); *see also Cedillos v. State*, 250 S.W.3d 145, 150 (Tex. App.–Eastland 2008, no pet.) (stating that because the defendant "did not object on the record to the use of restraints in the jury's presence, the issue is waived, . . . ."). Issue three is overruled.

**E. Request for Juror Information**

In issue four, appellant contends the trial court erred by denying him access to information on the jurors who served on the convicting jury. He argues that he needed information on the jurors because he had to question them about whether they heard the noise of the shackles.

The trial court held a joint hearing on separate motions for new trial filed by appellant and his co-defendant, Jose Cardenas. During this hearing, when Cardenas's appellate counsel asked appellant's trial counsel, "And so when the two Defendants [Cardenas and appellant] moved to accommodate the movement of their counsel, could you hear their shackles?", appellant's trial counsel said, "I never noticed it myself." Appellant's mother testified that she was present "[e]very day" during the guilt-innocence

---

[10]Appellant does not direct this Court to any portion of the record showing what type of shackles or restraints that either he or Jose Cardenas were supposedly wearing during their joint trial.

13

phase of appellant's trial and sat "[t]wo to three rows back behind" appellant. She testified that "[e]very movement that the attorneys made, the boys [appellant and Cardenas] had to adjust themselves. And you can clearly hear the shackles."

By its terms, article 35.29 of the Texas Code of Criminal Procedure protects juror personal information. *See* TEX. CODE CRIM. PROC. ANN. art. 35.29 (Vernon Supp. 2009).[11] After trial, a defendant is not entitled to discover jurors' personal information "unless he shows good cause." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see* TEX. CODE CRIM. PROC. ANN. art. 35.29. "What constitutes good cause must be based upon more than a mere possibility that jury misconduct might have occurred; it must have a firm foundation." *Cyr v. State*, 308 S.W.3d 19, 30 (Tex. App.–San Antonio 2009, no pet.); *Esparza v. State*, 31 S.W.3d 338, 340 (Tex. App.–San Antonio 2000, no pet.) (stating that "[j]uror information shall remain confidential except upon a showing of good cause."). In *Hooker v. State*, the court held that article 35.29's good-cause showing "must be based upon sworn testimony or other sufficient supportive evidence in the record." 932 S.W.2d 712, 716 (Tex. App.–Beaumont 1996, no pet.). At the hearing on a motion for new trial, the trial court is the trier of fact and the sole judge of the witnesses' credibility. *Melton v. State*, 987 S.W.2d 72, 75 (Tex. App.–Dallas 1998, no pet.) (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)).

---

[11]Article 35.29 of the code of criminal procedure provides:

> Information collected by the court or by a prosecuting attorney during the jury selection process about a person who serves as a juror, including the juror's home address, home telephone number, social security number, driver's license number, and other personal information, is confidential and may not be disclosed by the court, the prosecuting attorney, the defense counsel, or any court personal except on application by a party in the trial or on application by a bona fide member of the news media acting in such capacity to the court in which the person is serving or did serve as a juror. On a showing of good cause, the court shall permit disclosure of the information sought.

TEX. CODE CRIM. PROC. ANN. art. 35.29 (Vernon Supp. 2009).

Because the testimony is conflicting with respect to whether appellant's shackles made any noise, we hold that the trial court did not err in finding that appellant failed to show good cause to disclose the jury information and in overruling the request. Issue four is overruled.

## F. Assistance During Voir Dire

In issue five, appellant contends the trial court erred by prohibiting his defense counsel from having a staff member present in the courtroom to help his defense counsel during voir dire examination. Prior to starting voir dire examination, appellant's defense counsel told the trial court, "Judge, as far as Mr. Sanchez, the investigator, he was actually hired by [Jose Cardenas's defense counsel] and myself outside of the Court. . . . [W]e hired him to sit in the trial and help us pick a jury. So we'd like for— " At that point, the trial court stated, "He's not a consultant. . . . Because of the nature of this case, because of the fact that the gang prosecutor is trying the case, only attorneys, the Defendants, court staff, and the jurors will be the only ones allowed in the courtroom. Nobody else will be allowed until after we select a jury."

"The control of the business of the court is vested in the sound discretion of the trial judge." *Marquez v. State*, 921 S.W.2d 217, 223 (Tex. Crim. App. 1996). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

Here, the trial court did not allow Sanchez to remain in the courtroom during voir dire because he was not a consultant and because of the nature of the case. Appellant does not state how Sanchez's absence from the courtroom during voir dire prevented him from selecting a fair and impartial jury. Accordingly, we find the court's action did not infringe upon appellant's right to a fair trial and therefore was not an abuse of discretion. Issue five

15

is overruled.

## G. Severance

In issue six, appellant contends the trial court erred by failing to sever his trial from that of his co-defendant, Jose Cardenas. Both appellant and Cardenas were charged with and tried together for the murder of Jose Gomez and the aggravated assault of A.S., arising out of the same criminal transaction. We review the denial of a motion to sever trials for an abuse of discretion. *Adams v. State*, 180 S.W.3d 386, 400 (Tex. App.–Corpus Christi 2005, no pet.). An abuse of discretion occurs when the trial court's ruling is outside the zone of reasonable disagreement regarding the law applicable to an issue. *Id*. "The trial court has the discretion to try two defendants together when they are indicted for the same offense or any offense growing out of the same transaction." *Luna v. State*, 264 S.W.3d 821, 831 (Tex. App.–Eastland 2008, no pet.). To preserve a complaint that the trial court abused its discretion by failing to order a severance, a defendant must make a timely motion to sever and introduce evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2007).[12] A motion to sever under article 36.09 "is 'timely' if made at the first opportunity or as soon as the grounds for prejudice become apparent or should have become apparent, thus providing the trial court an opportunity to rule on the potentially prejudicial evidence at the time it is introduced." *Aguilar v. State*, 26 S.W.3d 901, 910

---

[12]Article 36.09 provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants, provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX. CODE CRIM. PROC. ANN. art. 36.09 (Vernon 2007).

(Tex. Crim. App. 2000).

In this case, the record does not include a pre-trial motion to sever. Furthermore, the record does not show that appellant ever requested a severance. Accordingly, appellant has not preserved this complaint for appellate review. *See* TEX. R. APP. P. 33.1. Issue six is overruled.

### III. Conclusion

We affirm the trial court's judgment of conviction for both offenses.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of July, 2010.