Martin Kenny BEROTTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–93–00525–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 1997.

Rehearing Overruled Oct. 20, 1997.

Discretionary Review Refused
April 8, 1998.

George O'Neil Jacobs, Houston, for appellant.

1. TEX.PENAL CODE ANN. § 21.11 (1995).

John B. Holmes, Keli Roper, Houston, for State.

## EN BANC OPINION

SCHNEIDER, Justice.

Appellant, Martin Kenny Berotte, pleaded not guilty to two counts of indecency with a child.[1] A jury found him guilty of one count. In four points of error, appellant contends the trial court erred by (1) refusing to submit a defense exhibit to the jury; (2) admitting the results of a polygraph examination; (3) admitting the testimony of a child who was incompetent; and (4) admitting the complainant's outcry statement. We affirm.

### Background

Appellant's first marriage to Veronica H. ended in divorce. The couple had two daughters, T.B. and R.B. After the divorce, the girls lived with their mother and appellant had visitation rights. Appellant's second marriage was to Lisa Marie G., who had a child by a previous marriage, N.F.

N.F.'s grandmother was bathing her one evening, when the child cried out in pain and told her grandmother that her daddy had hurt her "tutu." The grandparents took the child to Gulf Coast Hospital in Baytown, then to Texas Children's Hospital in Houston. Doctors suspected the child had been sexually abused because N.F. had injuries to her genital area; they informed the Baytown Police Department. Baytown police officer Marvin Currie arrested appellant, but eventually released him without charges in regard to N.F. Appellant voluntarily underwent polygraph testing.

While Currie was investigating the incident with N.F., he received a new report from Veronica H. alleging appellant had molested T.B. She told Currie that T.B. had made an outcry to her uncle, Felton

H. Appellant was indicted for aggravated sexual assault against T.B. This indictment was dismissed and appellant was reindicted for two counts of sexual indecency with T.B., for touching her breasts and her genitals. The jury convicted him for touching the child's genitals. The trial court sentenced appellant to 10–years imprisonment, probated for 10 years, a $200 fine, and 300 hours of community service.

## The Videotape

In point of error one, appellant argues the trial court erred by not allowing the jury to see a videotape admitted into evidence and requested by the jury during its deliberations as part of a general request for exhibits. We disagree.

The videotape, which was made by appellant, included footage of appellant, his wife, and his children interacting in various settings—flying a kite, relaxing by the pool, celebrating Christmas—over a period of three years. While the trial court initially admitted the tape into evidence, after the jury had retired to deliberate, it reconsidered its earlier decision and announced that the jury would not be permitted to watch the tape. During deliberations, however, the jury asked to see "all" of the exhibits. Although all other exhibits were delivered to the jury room, the tape was not given to the jury. Approximately one hour later, the jury returned a guilty verdict.

The statement of facts does not include any other reference to the tape; however, the transcript contains a secondary charge to the jury advising them to view the tape only with the sound turned off. At the bottom of this supplemental charge is a handwritten entry, signed by the trial court:

This document was offered along with the videotape to the jury during its deliberation. Before accepting this document or the video, the bailiff was instructed by the jury that it did not want the video. Neither this instruction nor the video was seen by the jury.

It is uncontested that the jury never watched the videotape, even though it had been admitted as an exhibit and the jury had requested "all" exhibits, and even though defense counsel specifically objected to the trial court's failure to give the videotape to the jury. The supplemental charge and handwritten entry indicate the trial court attempted to correct what it considered to be an erroneous ruling on the admissibility of the videotape, but the jury apparently concluded its deliberations before the trial court could present the supplemental instructions.

Appellant contends he was not informed of: (1) the proposed supplemental charge;[2] (2) the jury's decision not to look at the tape; or (3) the handwritten entry documenting the jury's decision. He claims he did not learn what had transpired until he filed his appeal, and contends he was deprived of an opportunity to question the bailiff or object on the record.

 We presume regularity of the proceedings, absent any showing to the contrary. Appellant bears the burden of overcoming that presumption of regularity. *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). The trial court is required to discuss any proposed supplemental charge to the jury with counsel. *See* Tex.Code Crim. P.Ann. art. 36.27. (Vernon 1989). The trial court also would have been expected to inform counsel of the jury's rejection of the tape. Nothing in the record affirmatively supports appellant's contentions that

2. In one of the dissents, the author contends the supplemental charge was an ex parte communication by the trial court to the jury. The only evidence in the record concerning this charge clearly shows that it was a supplemental charge. There is no evidence in the record suggesting that the charge was an ex parte communication. In fact, only appellant, through his brief, has alleged that the charge was an ex parte communication. If appellant wanted to challenge the propriety of the communication, he should have raised the challenge in a motion for new trial with the trial court.

the judge did not so inform the parties. Appellant's contentions are presented for review for the first time in his brief, as no motion for new trial was filed.

 While a motion for new trial is not required to preserve a point of error in an appeal of a criminal matter, it is the vehicle for presenting facts not otherwise shown in the record. TEX.R.APP.P. 30(a); *Mata v. State*, 867 S.W.2d 798, 802 (Tex. App.—El Paso 1993, no pet.). A party has the duty to develop an adequate record for appellate review. Before filing an appeal, a party has the opportunity, if not the obligation, to examine the transcript and statement of facts, and to challenge these if he finds inaccuracies. Here, counsel's naked allegation is not sufficient to overcome the presumption of regularity. To hold otherwise is to invite parties to attack the proceedings based on unproven, unilateral assertions. Therefore, we will consider the supplemental charge and its handwritten entry in our examination of the issue, and turn our attention to the withholding of the tape.

 The Code of Criminal Procedure requires the trial court to give the jury any exhibits admitted as evidence.[3] If a jury requests an exhibit and the court refuses to comply with the request, it is reversible error. *Parker v. State*, 745 S.W.2d 934, 936 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Appellant characterizes the trial court's actions as a "refusal" to supply a requested exhibit. The State argues we should not conclude from the handwritten entry on the second charge that the judge refused to supply the tape. Rather, the State would have us conclude that the jury, in effect, rescinded their request to see this specific exhibit. All that is in the record is the jury's request for "all" of the exhibits, the supplemental charge, and the handwritten note. The authenticity of the trial court's signature is not disputed, and the note shows the trial court did, in fact, offer the

tape to the jury. In doing so, it complied with its statutory obligation. Because we cannot conclude the trial court refused to supply the jury with this evidence, we are unwilling to call this fundamental error.

In *Weatherred v. State*, 833 S.W.2d 341, 355 (Tex.App.—Beaumont 1992, pet. ref'd), the court concluded the trial court erred when it sent an edited exhibit to the jury and conducted a harm analysis. *Id.* at 356. The situation here is also akin to that in *First Employees Ins. Co. v. Skinner*, 646 S.W.2d 170, 172–73 (Tex.1983). There, when the trial court refused to supply exhibits to the jury, the supreme court held the trial court erred but that the error was not reversible. We further distinguish this case from *Parker* in several respects. Unlike the jury in *Parker*, this jury did not specifically ask to see the videotape, not even after it had asked for all of the exhibits and this one was not supplied with the others. Second, the threat of contempt and the element of coercive dissuasion present in *Parker* were not present. Here, the jury was not attempting to accommodate the wishes of the judge; in fact, it rejected a late attempt to provide the videotape.

 Texas civil appellate courts have held that the trial court impermissibly comments on the weight of the evidence when it withdraws pertinent evidence from the jury's consideration. *See Redwine v. AAA Life Ins. Co.*, 852 S.W.2d 10, 14 (Tex.App.—Dallas 1993, no writ); *Moody v. EMC Servs., Inc.*, 828 S.W.2d 237, 244 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *First Nat'l Bank v. Jarnigan*, 794 S.W.2d 54, 61 (Tex.App.—Amarillo 1990, writ denied.). Error, if any, would be in the nature of such an impermissible comment. Unless this Court concludes beyond a reasonable doubt that an error made no contribution to the conviction, we must reverse. TEX.R.APP.P. 81(b)(2). Assum-

---

3. There shall be furnished to the jury upon its request any exhibits admitted as evidence in the case. TEX.CODE CRIM.P.ANN. art. 36.25 (Vernon 1989).

ing, without deciding, the trial court erred, we hold any error was harmless.

The contents of the videotape were described in detail during direct and cross-examination of appellant and in counsel's closing argument. The jury had repeated opportunities to hear how close the family was, how much the children loved and trusted their father, and what happy scenes the video depicted. They had this knowledge during deliberations when they evaluated the testimony of the children, the testimony and records of the examining physicians, the testimony of the police officers involved in both cases, and the testimony of the adults to whom an outcry was made. We are satisfied beyond a reasonable doubt that the late offer of the tape, in light of the jury's rejection of it, made no contribution to the conviction.

We overrule point of error one.

### Polygraph Test

In point of error two, appellant argues the trial court erred by permitting the State to disclose he had failed a polygraph test. The State counters that appellant waived the error and, even if he had not, he opened the door to this testimony. Appellant complains only of the second instance of testimony by a State's witness regarding polygraph results. Defendant did not object the first time the State asked its witness, a police officer, about the results of the polygraph taken by appellant. The officer responded, "He flunked it." Appellant voiced his objection only after the State questioned another witness about the results.

To preserve error, a party must object each time inadmissible evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991). Because of their inherent unreliability and tendency to be unduly persuasive, polygraph examination results are inadmissible for any purpose in a criminal proceeding. *Banda v. State*, 727 S.W.2d 679, 681 (Tex.App.— Austin 1987, no pet.) (citing *Nethery v.*

*State*, 692 S.W.2d 686, 700 (Tex.Crim.App. 1985)). However, admission of testimony about polygraph results is not considered reversible error in the absence of an objection. To preserve error, a defendant must object to all references made during trial to the polygraph results. *Leach v. State*, 548 S.W.2d 383, 385 (Tex.Crim.App.1977); *Banda*, 727 S.W.2d at 681. Because appellant waited to object until the second time a witness testified regarding the polygraph results, he did not preserve the error for review.

We overrule point of error two.

### Competency of Child Witness

In point of error three, appellant contends the trial court erred in admitting the testimony of N.F., his four-year-old step-daughter, because she was not competent to testify. We disagree.

Children are competent to testify unless the trial court determines, after a hearing, the child does not possess sufficient intellect to relate the transactions about which she is being questioned. Tex. R.Crim.Evid. 601(a)(2); *Coachman v. State*, 692 S.W.2d 940, 945 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). When we review the trial court's determination, we examine not just the witness's responses at the qualification hearing, but the entire testimony. *Fields v. State*, 500 S.W.2d 500, 503 (Tex.Crim.App.1973); *Beavers v. State*, 634 S.W.2d 893, 895 (Tex.App.— Houston [1st Dist.] 1982, pet. ref'd). N.F. frequently nodded or shrugged in response to questions and much of her testimony before the jury was contradictory and confusing. She was best able to respond verbally when asked leading questions. Confusing and inconsistent responses from a child are not reasons to determine she is incompetent to testify; rather, they speak to the credibility of her testimony. *Upton v. State*, 894 S.W.2d 426, 429 (Tex.App.— Amarillo 1995, pet. ref'd).

N.F. was four years old at the time of this trial. There is no minimum

age at which a child is considered a competent witness. *Upton,* 894 S.W.2d at 429; *Heckathorne v. State,* 697 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). A child does not need to understand the obligation of the oath, but the child must understand the obligation to be truthful. *Provost v. State,* 514 S.W.2d 269, 270 (Tex.Crim.App.1974); *Gonzales v. State,* 748 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). During the qualification hearing, N.F. was able to convey accurately: (1) her own name; (2) the names of the adults with whom she lives; (3) her brothers' names; (4) she liked to play with toys; (5) the sun was shining outside and it was not raining; (6) the "little things in her ears" were called earrings; (7) she was wearing a skirt; and (8) she has a little dog whose name is "Dusty." She appeared to have the intellectual capacity to relate what had happened to her. Because she was not able to articulate the difference between the truth and a lie, or between being good and bad, it appears less certain that she understood her obligation to be truthful. However, N.F. agreed that one of her brothers had gotten a whipping for telling a lie and that she had to "be good" to avoid a whipping. When the judge asked her if she would promise she would answer the questions asked of her, tell the truth, and do good so she wouldn't get a whipping, she nodded her head, then said, "Yes."

The role of the trial court is to make the initial determination of competency, not to assess the credibility or weight to be given the testimony. Absent an abuse of discretion, we uphold the trial court's determination. *Garcia v. State,* 573 S.W.2d 12, 14 (Tex.Crim.App.1978). Although the responses N.F. gave could have led to a different ruling, we give great deference to the judge who was there to personally evaluate the child and her responses. Accordingly, we are not persuaded he abused his discretion in permitting N.F. to testify.

We overrule point of error three.

## Notice of Intent to Use Outcry Witness

In point of error four, appellant contends the trial court erred by admitting a hearsay statement made by the child, T.B. The State argues the statement was admissible as an outcry. Appellant objected to its admission, arguing the State did not comply with the procedures mandated in Code of Criminal Procedure article 38.072. *See* Tex.Code Crim.P. art. 38.072.

The record shows the child is under 12 years of age and made her outcry to her uncle, Felton H., an adult over the age of 18. Appellant was originally indicted in cause number 615384 for aggravated sexual assault of a child, alleged to have occurred on or about August 1, 1991. In September 1992, the State notified appellant in writing of its intention to use the child's outcry statement and provided appellant with H.'s name and a written summary of the statement; appellant filed a motion for a hearing pursuant to article 38.072. In mid-October, trial was postponed. Appellant was reindicted in cause number 646771 for indecency with a child, alleged to have occurred on or about May 1, 1991. On December 8, 1992, appellant was notified a second time of the State's intent to use the child's outcry statement to H. Trial commenced December 14, 1992. Based on the amount of time (six days) that elapsed between the second notification and commencement of trial, appellant contends he did not receive the 14–days' notice required.

The hearsay statement of a child abuse victim may be admissible if it was the first statement made about the abuse by the child to a person 18 years of age or older and, on or before the 14th day before the date the proceeding began, the party intending to use the statement: (1) notified the adverse party of its intent to do so; (2) provided the adverse party with the name of the witness through whom it intends to offer the statement; and (3) provided the adverse party with a written summary of the statement. Tex.Code Crim.P.Ann. art. 38.072. For the outcry statement to be

admissible, strict compliance with the procedures set forth in the code is mandatory. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim.App.1990).

This Court has not defined what constitutes "strict compliance" with the provisions of the article 38.072. Appellant argues that because the reindictment specified a different charge and alleged a different date, we should interpret strict compliance to mean the State was required to send appellant, on or before December 1, 1992, another notice of its intent to use the statement. The State contends the purpose of the statute is to provide adequate notice to a defendant, and because neither the complainant, the witness, nor the substance of the outcry statement changed, the State strictly complied with article 38.072.

Various appellate courts have held outcry statements are admissible even when the provisions of article 38.072 are not strictly satisfied; so long as the defendant has received actual notice, any error is harmless. *See Upton,* 894 S.W.2d at 429; *Martin v. State,* 823 S.W.2d 391, 394 (Tex. App.—Texarkana 1992, pet. ref'd); *Gottlich v. State,* 822 S.W.2d 734, 737 (Tex. App.—Fort Worth 1992, pet. ref'd); *Alvarado v. State,* 817 S.W.2d 738, 739 (Tex. App.—San Antonio 1991, no pet.).

■ Here, the State complied with the requirements of article 38.072 when it notified appellant in September, three months before trial commenced, of its intent to use the outcry statement, the name of the person to whom it was made, and the substance of the statement. Even if this did not constitute strict compliance, we are persuaded by the reasoning of other appellate courts that any error was harmless because appellant had actual notice of the State's intent to use the outcry testimony.

We overrule point of error four.

We affirm the judgment of the trial court.

Justices MIRABAL and O'CONNOR initially sitting.

Justices MIRABAL and O'CONNOR dissenting with separate opinions.

On Justice TAFT's motion for en banc consideration, Chief Justice SCHNEIDER and Justices WILSON, HEDGES, ANDELL, TAFT, and NUCHIA voted to grant en banc consideration.

Justices COHEN, MIRABAL, and O'CONNOR voted to deny en banc consideration.

Justices WILSON, HEDGES, TAFT, and NUCHIA join Justice SCHNEIDER's majority opinion.

Justices COHEN, O'CONNOR, and ANDELL join Justice MIRABAL's dissenting opinion.

Justice O'CONNOR also dissenting separately.

MARGARET GARNER MIRABAL, Justice, dissenting..

I dissent. In my opinion, appellant's point of error one should be sustained, but only for the reasons stated here.

In point of error one, appellant asserts the trial court erred by refusing to allow the jury to see defendant's exhibit number two, a videotape admitted into evidence and requested by the jury during its deliberations as part of a general request for exhibits.

The Code of Criminal Procedure requires the trial judge to give the jury, upon its request, any exhibits admitted as evidence.[1] *Lopez v. State,* 628 S.W.2d 82, 85 (Tex.Crim.App.1982); *Parker v. State,* 745 S.W.2d 934, 936 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Article 36.25 is mandatory, and it is reversible error for the trial court to refuse to comply with the

---

1. There shall be furnished to the jury upon its request any exhibits admitted as evidence in the case. TEX.CODE CRIM.P.ANN. art. 36.25 (Vernon 1989).

jury's request for an exhibit. *Parker*, 745 S.W.2d at 937.

During their deliberations, at 2:35 p.m., the jury foreman sent a note to the judge asking to see "all" of the exhibits. The videotape was not given to the jury when the other exhibits were delivered to the jury room. One and one-half hours later, at 4:05 p.m., the jury returned its verdict of guilty. It is uncontested that the jury never saw the videotape, even though it had been admitted as an exhibit and the jury had requested "all" exhibits, and even though defense counsel specifically objected to the trial court's failure to give the videotape to the jury. The record indicates that the trial court attempted to correct what it considered to be an erroneous ruling on the admissibility of the videotape, but the jury apparently concluded its deliberations before the judge could present supplemental instructions. The jury never saw the supplemental instructions or the videotape.

Under the circumstances here, I would hold the trial court committed reversible error [2] when it did not provide the videotape, after it had been admitted into evidence and was requested by the jury. If the jury had received instructions about the trial court's change in its ruling on the admissibility of the videotape, we would have a different case to decide. However, the jury received no such instructions.

For these reasons, I conclude that point of error one should be sustained, the judgment should be reversed, and the case should be remanded for a new trial.[3]

Justices COHEN, O'CONNOR, and ANDELL join this dissent.

Justice O'CONNOR dissenting separately.

O'CONNER, Justice, dissenting.

I dissent from the en banc opinion resolution of point of error one, and join in the dissenting opinion by Justice Mirabal.[1] I also dissent from the en banc opinion on point of error three, in which appellant, Martin Kenny Berotte, contends the trial court erred in admitting the testimony of a child who was incompetent to testify.

### The Videotape

The dissenting opinion fails to mention a critical reason the videotape should have been given to the jury, and the reason the case should be reversed.

Appellant's lawyer offered the videotape into evidence as defendant's exhibit number two; the State objected, claiming it was irrelevant. Over the State's objection, the trial court admitted the tape. The tape was not played for the judge or the jury at the time of its admission. During closing arguments, counsel for appellant referred several times to the tape, and asked the jury to look in particular at the kite-flying segment because "there are statements in there by T.B. when she's not in a courtroom . . . where she talks about her feelings about her father and her mother."

The record shows that after the jury had retired to deliberate, the trial judge had second thoughts about the admissibility of the tape. At first, the trial judge told the lawyers he would permit the jury to see the tape but with the volume turned off. Defense counsel objected because he had argued to the jury that they should listen to T.B.'s statements on the tape. A short

---

**2.** In light of the contents of the videotape and the closing argument of appellant's counsel to the jury about the videotape, I cannot say beyond a reasonable doubt that the error made no contribution to the conviction. TEX. R.APP.P. 81(b)(2).

**3.** I note that the witness, who was four years old at the time of the original trial, will be at

least nine years old at the time of the second trial. Therefore, I consider point of error three to be moot. Further, the alleged errors raised in points of error two and four are not likely to recur at the retrial.

**1.** I do not join in footnote three to her opinion, which relates to point of error three.

time later, the trial judge announced he would not permit the jury to see it at all. Defense counsel strenuously objected, reminding the court that in his final argument, defense counsel told the jury to look at the tape. The judge decided to watch the tape himself before making a final decision.

Early in their deliberations, the jury foreman sent a note to the judge asking to see "all" of the exhibits. The videotape was not given to the jury when the other exhibits were delivered to the jury room. The statement of facts does not include any other reference to defendant's exhibit number two.

The transcript contains what appears to be a proposed supplemental charge to the jury advising them to view the tape only with the sound turned off. However, because the proposed charge was not shown to the lawyers for the State or for the defense, it was, at best, an *ex parte* communication by the judge with the jury.[2] At the bottom of this charge is a handwritten entry, signed by the judge:

> This document was offered along with the videotape to the jury during its deliberation. Before accepting this document or the video, the bailiff was instructed by the jury that it did not want the video. Neither this instruction nor the video was seen by the jury.

Appellant contends he was not informed of the proposed charge, the jury's decision not to view the tape, or the handwritten entry. He says he did not learn what had transpired between the trial judge and the

jury until he filed his appeal and the *ex parte* communication was included in the transcript. Appellant contends he was deprived of an opportunity to question the bailiff or object on the record. The State does not rebut appellant's contention.[3]

I would vote with Justice Mirabal to reverse on this point of error.

### Competency of Child Witness

In point of error three, appellant contends the trial court erred in admitting the testimony of N.F. because she was not competent to testify. N.F. was two-years old at the time of the alleged abuse; she was four-years old at trial.

We review the trial court's decision on the competence of a child witness based on an abuse of discretion standard. *Garcia v. State*, 573 S.W.2d 12, 14 (Tex.Crim.App. 1978); *Coachman v. State*, 692 S.W.2d 940, 945 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd). In such a review, we examine the child's responses at the qualification hearing and the rest of the testimony. *Fields v. State*, 500 S.W.2d 500, 503 (Tex. Crim.App.1973); *Beavers v. State*, 634 S.W.2d 893, 895 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd).

The en banc opinion weighs N.F.'s accurate statements against her inaccurate statements and concludes that the trial court did not abuse its discretion in permitting her to testify. I disagree that this is the correct way to determine the child's competence as a witness. N.F. was bound to answer some questions correctly during the qualifying hearing, *e.g.*, she knew her

---

2. It is not certain what the supplemental charge was. The charge may or may not have been given to the jury; the note may reflect the trial judge's thinking, without more. If it was not shown to the jury and only reflects the trial judge's thoughts, it should not have been included in the official transcript because it was not shown to either lawyer.

3. The State argues we should not conclude from the handwritten entry on the supplemental charge that the judge refused to supply the tape, but that the jury rescinded their

request to see the videotape. I disagree. Simply because the supplemental charge was in the transcript does not mean we may consider it part of the record on appeal. *See Jones v. State*, 116 Tex.Crim. 88, 32 S.W.2d 464 (1930) (trial judge's *ex parte* affidavit not part of record on appeal); *accord Rodriguez v. State*, 834 S.W.2d 592, 595 (Tex.App.—Houston [1st Dist.] 1992, pet ref'd) (docket entries not part of record); *Shields v. State*, 820 S.W.2d 831 (Tex.App.—Waco 1991, no pet.) (unsworn testimony concerning jurors not part of record).

name, the names of the adults with whom she lives, her brothers' names, and she said liked to play with toys. These things had nothing to do with her understanding of her obligation to be truthful.

On the critical issues, N.F. failed the test of competence. When she was asked what it meant to tell the truth, she could not respond, nor could she explain what it meant to tell a lie. She said it would be "right" to say it was raining even though it was not. She shook her head when asked if she had ever made up a story. She nodded her head yes when asked if it would be true if she claimed she could drive a car. When asked if she had ever made up a story or been spanked for making one up, she shook her head no to both questions. When she was asked if she knew what "good" was, she shook her head no; when asked if she knew what "bad" was, she again indicated she did not. N.F. held up one finger when asked her age (although she is four).[4]

N.F. frequently nodded or shrugged in response to question and much of her testimony before the jury was contradictory and confusing. She was best able to respond verbally when asked leading questions. When she was asked what happened with Kenny, she was not able to relate the story without prompting. Based on a review of her entire testimony, I believe the trial court abused its discretion when it determined that four-year old N.F. was competent to testify about an event that happened to her when she was two years old.

Based on my review of N.F.'s entire testimony, I would hold the trial court abused its discretion when it determined the child was competent to testify.

---

**4.** In footnote three of Justice Mirabal's dissenting opinion, she states that N.F. who was four at the time of the first trial, will be at least nine years old if the case is retried, and for that reason the point of error three is moot. I disagree. N.F. was two when the alleged sexual abuse occurred. Her ability to perceive and understand an event that happened when she was two-years old will not improve with age.