PD-1588&1589-14

PD-1588-14 & PD-1589-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/22/2014 11:45:48 AM
Accepted 12/29/2014 11:58:32 AM
ABEL ACOSTA
CLERK

In the
Court of Criminal Appeals of Texas

Cause No. 14-13-00796-CR & 14-13-00797-CR
In the
Court of Appeals for the Fourteenth District of Texas
at Houston

Cause Nos. 1344119 and 1344120
In the 176th District Court
Of Harris County, Texas

LUIS ROBERT GONZALEZ
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

PETITION FOR DISCRETIONARY REVIEW

Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas  77008
713-228-3800
Casey.garrett@sbcglobal.net

FILED IN
COURT OF CRIMINAL APPEALS

December 29, 2014

ABEL ACOSTA, CLERK

## IDENTITY OF PARTIES AND COUNSEL

Appellant: Luis Robert Gonzalez

Counsel for Appellant at Trial:

> Frumencio Reyes
> 3715 N. Main Street
> Houston, Texas 77009
> Texas Bar No. 16794400
> 713-864-4700

Counsel for Appellant on Appeal:

> Casey Garrett
> 1214 Heights Boulevard
> Houston, Texas 77008
> Texas Bar No. 00787197
> 713-228-3800

Counsel for the State at Trial:

> Erin Epley
> Texas Bar No. 24061389
> Terese Buess
> Texas Bar No. 03316875
> Assistant District Attorneys
> 1201 Franklin
> Houston, Texas 77002
> 713-755-5800

Counsel for the State on Appeal:
> Harris County District Attorney's Office
> Appellate Division
> 1201 Franklin, Suite 600
> Houston, Texas 77002
> (713) 755-5800

Trial Judge: The Honorable Stacey W. Bond

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .............................................. 2

TABLE OF CONTENTS ..................................................................... 3

INDEX OF AUTHORITIES ................................................................. 4

STATEMENT REGARDING ORAL ARGUMENT ................................. 6

STATEMENT OF THE CASE .............................................................. 6

STATEMENT OF PROCEDURAL HISTORY ......................................... 6

QUESTION PRESENTED FOR REVIEW .............................................. 7

PRAYER ......................................................................................... 17

CERTIFICATE OF COMPLIANCE ..................................................... 18

CERTIFICATE OF SERVICE .............................................................. 19

# INDEX OF AUTHORITIES

**Cases**

*Arizona v. Fulimante*, 499 U.S. 279 (1991) ...................................................... 9

*Berotte v. State*, 992 S.W.2d 13, 17-18 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) ...................................................... 12

*Broxton v. State*, 909 S.W.2d 912 (Tex. Crim. App. 1995) ........................... 9

*Clark v. State*, 952 S.W.2d 882 (Tex. App.—Beaumont 1997, no pet.) ...... 10

*Coy v. Iowa*, 487 U.S. 1012, 1018 (1988) ...................................................... 14

*Crawford v. Washington*, 541 U.S. 36 (2004) ............................................... 14

*Davis v. Alaska*, 415 U.S. 308 (1974). .......................................................... 9

*Gilley v. State*, ---S.W.3d--- WL 128009 (Tex. Crim. App. 2014) .............. 12

*Glockzin v. State*, 220 S.W.3d 140 (Tex. App.— Waco 2007, pet. ref'd) .................................................................................. 10

*Hollinger v. State*, 911 S.W.2d 35 (Tex. App.— Tyler 1995, pet. ref'd) .................................................................................. 13

*In re Winship*, 397 U.S. 358 (1970) ............................................................... 8

*Martinez v. State*, 178 S.W.3d 806 (Tex. Crim. App. 2005) ........................ 10

*Mays v. State*, 285 S.W.3d 884 (Tex. Crim. App. 2009) ............................... 9

*Saldano v. State*, 70 S.W.3d 873 (Tex. Crim. App. 2002) ............................ 9

*United States v. Wade*, 388 U.S. 218 (1966) ................................................. 15

*Villalon v. State*, 791 S.W.2d 130 (Tex. Crim. App. 1990) ......................... 10

*Watson v. State*, 596 S.W.2d 867 (Tex. Crim. App. 1980)........................... 13

**Statutes**

Tex. Code Crim. P. Ann. art. 38.07 (Vernon 2005) ..................................... 10

**Treatises**

John Bradley, "New Sex Offender Crimes and Punishemnts," 70 TXBJ 768,
769 (October 2007)............................................................................ 13

Meredith F. Sopher, "The Best of All Possible Worlds: Balancing Victims'
and Defendants' Rights in the Child Sexual Abuse Case," 63 Fordham L.
Rev. 633, 636 (1994) ....................................................................... 10

**Constitutional Provisions**

Tex. Const. art. 1 ................................................................................... 8

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Luis Gonzalez requests oral argument.

## STATEMENT OF THE CASE

Mr. Gonzalez was charged by indictment with the felony offense of aggravated sexual assault in cause number 1344120 and the felony offense of "super" aggravated sexual assault in cause number 1344119 (R.R.3 – 4-5; C.R. Indictment). Mr. Gonzalez pled not guilty to both allegations and the cases were tried together before a jury (R.R.3 – 4-5). The jury found him guilty as charged in the indictments (R.R.6 – 130). Thereafter, the jury assessed punishment at the statutorily imposed minimum in cause number 1344120, which is confinement for twenty-five years in the Texas Department of Criminal Justice, Institutional Division (R.R.7 – 12). In cause number 1344119, the jury assessed punishment at confinement for five years in the Texas Department of Criminal Justice, Institutional Division (R.R.7 – 12). Mr. Gonzalez filed timely notice of appeal.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals filed memorandum opinions affirming the convictions on October 30, 2014. No motion for rehearing was filed.

Pursuant to Rule 68.2 of the Texas Rules of Appellate Procedure, this Petition for Discretionary Review should be filed thirty days after the day the court of appeals filed its opinion. An extension motion was filed in accordance with the Texas Rules of Appellate Procedure and this Petition is due on December 31, 2014.

## QUESTION PRESENTED FOR REVIEW

If a criminal defendant is prevented from effectively cross-examining the witnesses against him, is the constitutional error under the United States and Texas Constitutions waived if he does not object at trial?

## ARGUMENT

If a criminal defendant is prevented from effectively cross-examining the witnesses against him, is the constitutional error under the United States and Texas Constitutions waived if he does not object at trial?

The Due Process clause of the United States Constitution prohibits sending a defendant to jail without providing a trial that is fundamentally fair. *In re Winship*, 397 U.S. 358, 363 (1970). Likewise, the Texas "due course of law" provision requires defendants receive a fair trial. Tex. Const. art. 1. The fairness requirement may be violated in a number of ways, either through the use of procedures which lack fairness, or through the denial of specific rights guaranteed by the Constitution and applicable to the states through the fourteenth amendment. *Id*. The Confrontation Clause of the

7

Sixth Amendment to the United States Constitution guarantees a defendant the right to effective cross-examination. *Davis v. Alaska*, 415 U.S. 308, 320 (1974). Likewise, the Texas Constitution guarantees a defendant the right to confront his accuser. Tex. Const. art. I sec. 10.

In its Memorandum Opinion, the court below concluded, without considering the merits, that Mr. Gonzalez did not preserve his claims under the United States and Texas Constitutions (Mem. Op. at 8). It is true that in most situations, a defendant must preserve his complaints about interference with his rights to cross-examination by making an objection and, in some circumstances, an "offer of proof" which sets forth the substance of the proffered evidence. *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009). The court below cited *Broxton v. State*, 909 S.W.2d 912, 917-918 (Tex. Crim. App. 1995) as an illustration of this principle. *Broxton* involved the trial court's limitations on specific areas of evidence.

In the instant case, Mr. Gonzalez complains of an inability to conduct *any* cross-examination of the complaining witness. While the necessity to preserve error applies to most constitutional claims, *Saldano v. State*, 70 S.W.3d 873, 887 (Tex. Crim. App. 2002), it does not apply to errors like the one in this case, which are structural errors. *See Arizona v. Fulimante*, 499 U.S. 279, 310 (1991).

8

Under the current applicable laws, the testimony of a child victim is sufficient to support a conviction for aggravated sexual assault and corroboration is not required. Tex. Code Crim. P. Ann. art. 38.07 (Vernon 2005); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005). Even the absence of physical evidence does not render the evidence insufficient. *Glockzin v. State*, 220 S.W.3d 140, 148 (Tex. App.—Waco 2007, pet. ref'd). In fact, it is widely acknowledged that physical evidence of abuse exists in only a small percentage of cases, and witnesses in addition to the child victim are even less common. *See, e.g.*, Meredith F. Sopher, "The Best of All Possible Worlds: Balancing Victims' and Defendants' Rights in the Child Sexual Abuse Case," 63 Fordham L. Rev. 633, 636 (1994).

Child victims of sexual crimes are afforded great latitude when testifying and they are not expected to testify with the same clarity and ability as is expected of a mature and capable adult. *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). In cases dealing with child witnesses, the rule against leading questions is somewhat relaxed. *Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.—Beaumont 1997, no pet.). Standards for competency are generally lax, requiring a judge merely to form an opinion about whether or not a child-witness has the cognitive ability to relate relevant facts, and whether or not a child-witness has the

capacity to appreciate the obligations of an oath, "or can at least distinguish the truth from a lie." *Gilley v. State*, ---S.W.3d--- WL 128009 (Tex. Crim. App. 2014). These are low expectations considering a child-witness who "can at least distinguish the truth from a lie" can put a defendant in prison for life based on his or her word alone.

Recently, moreover, this Court indicated its willingness to accept child-witness testimony without much of a safeguard regarding competency or ability when it determined that a competency examination under Rule 601(a)(2) is not a "critical stage of a criminal proceeding," and affirmed a conviction despite the fact that a trial judge conducted the competency examination *in camera* with only a court reporter in attendance. *Gilley v. State*, at 4. The majority opinion dismissed any serious inquiry into the reliability of child-witnesses, asserting, "the typical inquiry into a child-witness' capacity to relate facts and appreciate the virtue of veracity is hardly complex." *Id.*

Yet it is, demonstrably, complex. As Judge Johnson said in her dissent in *Gilley*, the reality of trial for sexual assault of a child is that, unless the child testifies at trial to events that are physically or temporally impossible, juries tend to believe the child, and the defendant will be convicted. *Gilley v. State*, ---S.W.3d--- WL 128009 (Tex. Crim. App. 2014, J. Johnson,

dissenting). As can be seen in the instant case, even in situations where children testify to events that are physically or temporally impossible, juries tend to convict. The complainant in this case testified "it felt like nothing," when she alleged Mr. Gonzalez put his private in her private and in her butt. She claimed she never had to clean up after any of these repeated rapes, and she testified his private looked like a "hot dog weiner," all facts that are clearly at odds with what every juror knows from personal experience about adult sexual experience. She testified nothing ever came out of his private. She told her doctor he "raped her every Saturday," and then testified at trial it might have happened four times, perhaps.

Courts and juries are reluctant to discount the testimony of child-witnesses in sexual abuse cases regardless of how inarticulate or uncertain the witnesses are. In *Berotte v. State*, a four year-old child-witness frequently nodded or shrugged in response to questions, her best verbal answers were in response to leading questions, and much of her testimony was contradictory and confusing, but the appellate court determined it was not an abuse of discretion to permit her to testify. *Berotte v. State*, 992 S.W.2d 13, 17-18 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). The court found she appeared to have the intellectual ability to relate events and to understand the obligation to be truthful. *Id*. The complainant in the instant

case, at nine years old, might arguably have had the required capacity to narrate, understand questions asked, frame intelligent answers to those questions, and understand a moral responsibility to tell the truth. *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980); *Hollinger v. State*, 911 S.W.2d 35, 3839 (Tex. App.—Tyler 1995, pet. ref'd). But the child-witness was testifying about events she claimed had happened to her as much as two or three years before, when she was a child in Kindergarten or perhaps preschool. Anyone who has spent any time with a child knows that even traumatic events are quickly forgotten or altered in the mind of a young child.

Even the most ardent of advocates in favor of loose rules for prosecution of child sex abuse cases acknowledge that child-witnesses are problematic. Prosecutor and commentator John Bradley says, "The standard process of relying on children as witnesses to prove sexual offenses has long been troublesome. Children…do not recall each act of sexual abuse with the same sort of pinpoint recollection as adults." John Bradley, "New Sex Offender Crimes and Punishments," 70 TXBJ 768, 769 (October 2007). All of these generalized problems with child-witnesses are exacerbated in cases where the child has had events and instances suggested to them prior to trial by parents, interviewers or other members of the pretrial team.

"Recent findings indicate that interviewing methods designed to discover the truth in these cases may in fact irretrievably bury that truth. In one highly publicized study, children aged four to six were repeatedly questioned about events that had not occurred. By the eleventh week, fifty-six percent of the children claimed that at least one false event was true." Meredith F. Sopher, "The Best of All Possible Worlds: Balancing Victims' and Defendants' Rights in the Child Sexual Abuse Case," 63 Fordham L. Rev. 633, 644-645 (1994). What's more, child abuse professionals were able to discern which statements were false only one-third of the time. *Id*.

The intent of the Sixth Amendment was to test the reliability of out-of-court testimonial statements in one manner alone – "the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). More than two decades ago, Justice Scalia devoted the better part of an opinion to a history of the Confrontation Clause, citing the Bible, Shakespeare and President Eisenhower to "illustrate...both the antiquity and the currency of the human feeling that a criminal trial is not just unless one can confront his accusers." *Coy v. Iowa*, 487 U.S. 1012, 1018 (1988). But the passion with which Scalia defended the right to confront one's accusers is wasted in situations where accusers are young children with limited memories, almost

no life experience, and plenty of adults suggesting and shaping the child's testimony in an earnest attempt to help them.

It has long been acknowledged that testimony based on suggestive pretrial procedures violates due process. *United States v. Wade*, 388 U.S. 218 (1966) (due process violated after suggestive eyewitness procedure). Children are inherently suggestible. In the instant case, the child-witness agreed on cross-examination that she'd met with doctors, therapists and members of the prosecution prior to trial to review the video she'd made after her outcry and to talk about her testimony (R.R.5 – 87). She testified during trial that Mr. Gonzalez had made inappropriate sexualized comments about her body during dinner at her grandmother's house, but then revealed that she didn't understand the comments indicating that someone else, her mother or grandmother or another adult at dinner, had told her about them (R.R.5 – 60-61). She testified she knew her mother had been raped, and her mother testified she'd talked about rape with her young daughter on many occasions, that it was therapeutic for her to discuss her own childhood sex abuse with her extended family, and that her daughter knew her abuser had gone to jail (R.R.3 – 33-35, R.R.5 – 50).

The trial boiled down to the testimony of the child-witness and Mr. Gonzalez' testimony, as in many child sex abuse cases. There was no

14

physical or forensic evidence and nothing but bolstering evidence on both sides to contradict the stories each of the parties told. In this case, the jury was asked to make a straight credibility determination between two strangers: a lovely, precocious nine-year old girl and a middle-aged male defendant. The only defense in such a case is cross-examination. But cross-examination can never be effective when the rules are loosened and expectations for general standards of credibility and competency are relaxed due to the fact that the complainant is a young child. To the extent a defendant can effectively cross-examine a child, the testimony of a child that has been suggested through interviews, coaching, and refreshing of a child's "memory" presents an impossible challenge for any defendant, and violates his rights to confrontation under the United States Constitution.

The stakes in child sex abuse cases are unprecedented. The minimum sentence for "super" aggravated sexual assault, one of the convictions in this case, is twenty-five years, and "there is no provision for early release. None. Parole is abolished, requiring the defendant to serve every day of his sentence." Bradley at 771. "But just in case a sex offender should live long enough to discharge the sentence, lawmakers went even further. A second conviction for continuous sexual abuse is punished by life in prison. A second conviction for super-aggravated sexual assault is punished as a

15

capital felony: life in prison or death by injection. Sex offenders who harm children will face longer prison sentences, no parole, no probation, relaxed procedural standards for conviction, and maybe the death penalty." *Id.* Under such circumstances it is vitally important to ensure that the defendants who face such penalties are, in fact, guilty of committing these crimes. Protections like the hallowed ones in the Sixth Amendment become crucial.

The instant case was a swearing match between a fourth-grade child with an emotionally wrenching story of childhood abuse and a mother who trained her about the meaning of "rape" when she was less than five years old, and a middle-aged apartment maintenance man with no remaining connection to her family. The jury took 14 hours to decide whether or not to convict, and then assessed the minimum in both cases. Because of the changes in the law, however, the minimum means twenty-five years without parole. Mr. Gonzalez opportunity to cross-examine the child-witness, coached and interviewed from the time she was seven years old, was meaningless. His conviction was a violation of due process and this court should reverse and remand for a new trial.

## PRAYER

Appellant respectfully prays this Honorable Court to grant his petition for discretionary review.

Respectfully submitted,

____/s/Casey Garrett____
Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas 77008
713-228-3800
Casey.garrett@sbcglobal.net

## CERTIFICATE OF COMPLIANCE

This is to certify that the petition for discretionary review has 3,007

words in compliance with Rule 9 of the Texas Rules of Appellate Procedure.

_____/s/Casey Garrett_____
Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas 77008
713-228-3800
Casey.garrett@sbcglobal.net

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been sent

through the e-file system to the following party:

Harris County District Attorney's Office
Appellate Division
1201 Franklin, Suite 600
Houston, Texas  77002


    /s/Casey Garrett
Casey Garrett
Texas Bar No. 00787197
1214 Heights Blvd.
Houston, Texas  77008
713-228-3800
Casey.garrett@sbcglobal.net

19



# JUDGMENT

# The Fourteenth Court of Appeals

LUIS ROBERTO GONZALEZ, Appellant

NO. 14-13-00796-CR                    V.

NO. 14-13-00797-CR

THE STATE OF TEXAS, Appellee

---

This cause was heard on the transcript of the record of the court below. Having considered the record, this Court holds that there was no error in the judgment. The Court orders the judgment **AFFIRMED**.

We further order appellant pay all costs expended in the appeal.

We further order this decision certified below for observance.

Affirmed and Memorandum Opinion filed October 30, 2014.



In The

# Fourteenth Court of Appeals

---

NO. 14-13-00796-CR
NO. 14-13-00797-CR

---

## LUIS ROBERTO GONZALEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 176th District Court
### Harris County, Texas
### Trial Court Cause Nos. 1344119 & 1344120

---

## M E M O R A N D U M   O P I N I O N

Appellant Luis Roberto Gonzalez appeals his convictions for aggravated sexual assault of a child under the age of six (sometimes referred to as "super" aggravated sexual assault) and aggravated sexual assault of a child under the age of fourteen. In two issues appellant challenges the sufficiency of the evidence to support his conviction for "super" aggravated sexual assault and his right to effective cross-examination. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record reflects that the complainant's first outcry came on May 30, 2011, when the complainant told her mother that "Ricky raped me." The mother explained that "Ricky" was the name she and the complainant used for appellant. The complainant later explained that appellant had "put his private in the hole in her private" and described other specific incidents of sexually abusive conduct.

At the time of the outcry, the complainant was seven years old. The complainant told her mother that on Saturdays before art class, appellant would have the complainant perform oral sex on him, and then would tell her she could have a snack before leaving for art class.

The complainant's mother met appellant when the complainant was approximately two years old. About six months later, appellant moved in with the mother and the complainant. When the complainant was three years old, the mother and appellant moved to a two-story apartment. When first describing the sexual abuse, the complainant explained that it happened in the two-story apartment when the complainant was four or five years old. The complainant was in kindergarten when she attended Saturday art classes, and was five years old at the beginning of the school year, turning six in October.

Officer B. A. Morrow of the Houston Police Department and the Children's Assessment Center (CAC), reviewed the complainant's CAC forensic interview. Morrow testified that the complainant "was able to divide how old she was or believed herself to be when things occurred to her," and that she used the apartments in which she lived to identify time frames. Based on his investigation and the complainant's statements, Morrow determined that the alleged abuse began while the complainant was in preschool. Morrow remembered that the complainant tied the abuse to an apartment with a staircase.

The complainant, who was nine years old at the time of trial, testified using anatomically correct dolls. The complainant testified that when she was living in the two-story apartment, on a Saturday she was sitting in the living room watching cartoons. The complainant described this two-story apartment as "the big house." Appellant came into the living room and closed the blinds. Appellant was wearing boxer shorts and a t-shirt. Appellant laid down on the couch with the complainant, placed his hand under her clothing, and touched her bottom. Appellant also pulled down his boxer shorts, took off the complainant's tights and underwear, and penetrated the complainant's vagina with his penis. During this same incident, the complainant testified appellant penetrated her anus with his penis. The complainant also testified to another incident in the same two-story apartment when appellant penetrated her vagina with his penis. The complainant testified that appellant contacted her vagina and anus with his hand on several occasions at both apartments. Appellant also had the complainant perform oral sex on him while they lived in the two-story apartment.

On cross-examination, the complainant testified that the incidents began to happen "around August 30, 2009[.]" The complainant explained that she did not outcry sooner because she was afraid of what appellant might do to hurt her or her mother. Defense counsel asked the complainant about watching the video of her forensic interview. The complainant testified she had watched the video recently, but affirmed that her memory of the events was independent of her memory of the video. Counsel questioned the complainant about whether she had reviewed her testimony with prosecutors. The complainant admitted that she had done so, but she stated that her account of events was not changed by that review.

Appellant testified that the complainant's mother began living with him in 2005. Appellant denied sexually assaulting the complainant. He further testified

3

that he did not take her to art classes on Saturdays because he was working.

The jury found appellant guilty as charged in the indictments and assessed punishment at 25 years in prison on each count. The trial court ordered appellant's sentences to run concurrently.

## II. ISSUES AND ANALYSIS

### A. Is the conviction supported by sufficient evidence?

In his second issue appellant complains he was denied his right to due process because he was convicted of "super" aggravated sexual assault of a child under the age of six despite insufficient evidence that the child-complainant was under the age of six at the time of the alleged conduct. While appellant couches his complaint in terms of denial of due process, his issue raises the question of whether the evidence is sufficient to support a finding that the complainant was under six years old at the time of the offense.

In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). Rather, the verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact is the sole judge of the credibility of the witnesses and of the strength of the evidence. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence,

4

we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the offense of "super" aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the sexual organ of a child under the age of six, by any means. *See* Tex. Penal Code Ann. §§ 22.021(a)(1) (B)(i), (iv) (West 2011). *See also* Tex. Penal Code Ann. §§ 22.021(f)(1) (West 2011). In this case, appellant was indicted for aggravated sexual assault of a child under the age of fourteen, and "super" aggravated sexual assault of a child under the age of six. Appellant does not challenge the sufficiency of the evidence to support his conviction for aggravated sexual assault of a child under fourteen. With regard to the charge of "super" aggravated sexual assault of a child, the indictment alleged that on or about August 30, 2009, appellant intentionally or knowingly caused the penetration of the sexual organ of the complainant, a child who was then younger than six years of age.

The complainant was born October 23, 2003; she was five years and ten months old on August 30, 2009. Appellant claims that "neither the complainant nor her mother could testify with any certainty about when the alleged conduct took place."

The record reflects that the complainant testified the incidents began to happen "around August 30, 2009[.]" In interviews at the CAC and with police officers, the complainant testified that the incidents occurred while she was

attending art classes and lived in the apartment with the staircase.[1] The complainant, her mother, and appellant moved often due to appellant's employment with the apartment complexes.

Using pictures of the apartment complexes, the complainant identified The Park at Woodwind Lakes and Woodway Square Apartments as the apartments in which she lived when the incidents of sexual assault took place. The complainant did not make specific reference to her age at the time of the incidents, but she testified to the location where the incidents occurred. The complainant's mother testified that they lived in The Park at Woodwind Lakes when the complainant was four or five years old. The complainant, her mother, and appellant testified that they moved into Woodway Square Apartments in 2009, when the complainant was five years old. They each testified that the complainant attended art lessons on Saturdays while they lived at Woodway Square Apartments. At The Park at Woodwind Lakes, the parties lived in a two-story apartment with an indoor staircase. At Woodway Square Apartments, they lived in an upstairs unit, which had an outdoor staircase.

The testimony of a child-complainant, standing alone, is sufficient to support a conviction for sexual assault. *See* Tex. Code Crim. Proc. Ann. Art. 38.07 (West 2011); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (concluding a child-complainant's unsophisticated terminology alone established element of penetration beyond a reasonable doubt). Despite the complainant's failure to testify to her exact age, she offered enough details to support the finding that she was under the age of six at the time appellant penetrated her vagina and anus on a Saturday while living in the apartment at The Park at Woodwind Lakes. *See*

---

[1] When the complainant refers to "the apartment with the staircase" she is referring to the unit at The Park at Woodwind Lakes, sometimes referred to by the complainant's mother as "the townhome."

*Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The complainant's mother supplied the chronological context necessary to determine the complainant's age at the time of the events the complainant recounted.

The jury heard the complainant's testimony and weighed her imperfect perception of time as to when the abuse occurred. The jury judged the credibility of the witnesses and reconciled conflicts in the testimony, and could have accepted or rejected any or all of the evidence on either side. *See Fuentes*, 991 S.W.2d at 271; *Sharp*, 707 S.W.2d at 614. In a sufficiency review, any inconsistencies in the testimony should be resolved in favor of the jury's verdict. *Johnson v. State*, 815 S.W.2d 707, 712 (Tex. Crim. App. 1991). We conclude that when the evidence is viewed in the light most favorable to the verdict, the jury, as a rational trier of fact, could have determined that the abuse described by the complainant, which occurred while the child was watching cartoons on a Saturday morning, occurred when the complainant was under six years old. *See McDuff*, 939 S.W.2d at 614.

The evidence presented is sufficient to support appellant's conviction for super aggravated sexual assault of a child under the age of six. Appellant's second issue is overruled.

**B.   Did appellant preserve error regarding his argument that he was denied his right to due process when he was denied his right to effective cross-examination of the child witness?**

In appellant's first issue, he complains that he was denied his right to due process under the United States and Texas Constitutions when he was denied his right to effective cross-examination because the witness against him was a child subjected to allegedly suggestive pretrial procedures. The State responds that appellant failed to preserve error in the trial court on this issue.

To preserve a complaint for appellate review, a party must present to the trial court a timely, specific request, objection, or motion, and obtain a ruling. Tex. R. App. P. 33.1(a). An appellate contention must comport with the specific objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Even constitutional errors may be waived by failure to object at trial. *Broxton v. State*, 909 S.W.2d 912, 917–18 (Tex. Crim. App. 1995). The record does not reflect that appellant asserted in the trial court that he was denied a right to effective cross-examination. The record reflects that appellant vigorously cross-examined the complainant. We conclude appellant failed to preserve error on this issue. *See id.* Accordingly, we overrule appellant's first issue.

The trial court's judgment is affirmed.


/s/ Kem Thompson Frost
   Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).